**BLACKFEET & GROS VENTRE
TRIBES OF INDIANS**

v.

**UNITED STATES.**

No. 2.

United States Court of Claims.

March 2, 1954.

John W. Cragun, Washington, D. C., for appellants. Ernest L. Wilkinson, Francis M. Goodwin, Donald C. Gormley, and Wilkinson, Boyder, Cragun & Barker, Washington, D. C., were on the briefs.

William D. McFarlane, Washington, D. C., with whom was Asst. Atty. Gen. Perry W. Morton, for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER and MADDEN, Judges.

WHITAKER, Judge.

This is an appeal by the Blackfeet and Gros Ventre Tribes of Indians from a final determination of the Indian Claims Commission. Blackfeet and Gros Ventre Tribes of Indians v. United States, 2 Ind. Cl.Com. 302. The appellants filed a petition with the Commission alleging four claims under the Indian Claims Commission Act, 60 Stat. 1049, 25 U.S.C.A. § 70a. The appellee filed a motion for summary judgment as to all four claims on the ground that the issues involved therein were *res adjudicata* under the decision of this court in Blackfeet Nations v. United States, 81 Ct.Cl. 101. The motion was granted as to the first claim on the ground that it was barred by the decision of this court in the Blackfeet Nations case, supra, and was denied as to the remaining three claims.

The claim on which the motion was granted and upon which this appeal is being prosecuted was for an amount approximating $18,000,000 as damages for delay in payment[1] of compensation for lands taken by the appellee. The value of the lands, but no interest thereon, was paid appellants in 1935 pursuant to the judgment of this court in the Blackfeet Nations case, supra.

This action was brought under clause (1) of section 2 of the Indian Claims Commission Act, supra, which provides:

"The Commission shall hear and determine the following claims against the United States on behalf of any Indian tribe, band, or other identifiable group of American Indians residing within the territorial limits of the United States or Alaska: (1) claims in law or equity arising under the Constitution, laws, treaties of the United States, and Executive orders of the President; * * * * *"

and, in the alternative, under clause (5) of that section which gives the Commission jurisdiction of:

"* * * (5) claims based upon fair and honorable dealings that are not recognized by any existing rule of law or equity. * * *"

The Blackfoot Nation, of which appellants, the Blackfeet and Gros Ventre Tribes are members, entered into a treaty with the United States in 1855 which, *inter alia*, provided:

"Article 4. The parties to this treaty agree and consent, that the tract of country * * * [there followed a description of the tract] shall be the territory of the Blackfoot nation, over which said nation shall exercise exclusive control, excepting as may be otherwise provided in this treaty." [Treaty, October 17, 1855, 11 Stat. 657.]

A portion of this territory, 12,261,749,-76 acres, was taken from the Blackfoot Nation and restored to the public domain without its consent and without payment of compensation, by the Act of April 15, 1874, 18 Stat. 28 and the Executive Order of August 19, 1874.

---

1. Inasmuch as interest is usually the method employed in ascertaining the damages for delay in payment of the principal value of the land in a claim for just compensation under the Fifth Amendment, such damages will for convenience be hereinafter referred to as interest. See cases cited infra on this point.

In 1924 Congress passed a special jurisdictional act allowing the Blackfoot Nation to present in this court its claim for the taking of the land and all claims arising directly from the treaty of 1855, with right of appeal to the Supreme Court. Act of March 13, 1924, 43 Stat. 21.

This court rendered judgment in favor of the Blackfoot Nation for the taking of the land and awarded them $6,130,874.88, representing the value of the land at the time of the taking, reduced by offsets to $622,465.57. No appeal was prosecuted from this decision.

In their appeal to this court from the determination of the Indian Claims Commission dismissing their claim for damages for delay in payment, the appellants contend that the Commission erred in holding that the issues involved were *res adjudicata* because (1) this court had no jurisdiction to award interest as a part of just compensation under the special jurisdictional act pursuant to which the previous suit was brought; (2) irrespective of the scope of this court's jurisdiction in the former case, where the claim for interest as a part of just compensation was not tried on its merits in the prior suit, Congress, in enacting the Indian Claims Commission Act, did not intend to bar such a claim because of a judgment in a prior suit for the principal value of the land; and (3) that in any event the court in the prior suit did not determine appellants' right to recover under the "fair and honorable dealings" clause of the Act.

The appellee, on the other hand, contends that under the special Act this court had jurisdiction to award just compensation, which included interest; that the failure to request or to grant interest in the prior suit does not prevent the application of the rule of *res adjudicata* in the instant case; and that Congress in enacting the Indian Claims Commission Act specifically reserved to the United States all defenses except the statute of limitations or laches and, therefore, intended to permit the interposition of the defense of *res adjudicata;* and, finally, that plaintiffs' claim does not come within the "fair and honorable dealings" clause.

## The Court's Jurisdiction Under the Special Jurisdictional Act.

The appellants' right to the designated territory granted to them by the treaty of 1855 represented a property right protected by the Fifth Amendment. Shoshone Tribe of Indians of Wind River Reservation in Wyoming v. United States, 299 U.S. 476, 57 S.Ct. 244, 81 L.Ed. 360, and cases cited therein. A right arose in appellants for just compensation under the Fifth Amendment when the United States in exercising the power of eminent domain took their property for public use. In such case the owner in not only entitled to the value of the property at the time of the taking, but also, if the taking precedes the payment of compensation, to such additional amount as will produce the full equivalent of that value paid contemporaneously with the taking, and a reasonable rate of interest is usually the method employed to ascertain this additional amount. Seaboard Air Line Ry. Co. v. United States, 261 U.S. 299, 306, 43 S.Ct. 354, 67 L.Ed. 664; Brooks-Scanlon Corp. v. United States, 265 U.S. 106, 123, 44 S.Ct. 471, 68 L.Ed. 934; Phelps v. United States, 274 U.S. 341, 344, 47 S.Ct. 611, 71 L.Ed. 1083; Jacobs v. United States, 290 U.S. 13, 16–17, 54 S.Ct. 26, 78 L.Ed. 142; United States v. Creek Nation, 295 U.S. 103, 111, 55 S.Ct. 681, 79 L.Ed. 1331; Shoshone Tribe of Indians of Wind River Reservation in Wyoming v. United States, 299 U.S. 476, 496–497, 57 S.Ct. 244, 81 L.Ed. 360; United States v. Klamath and Moadoc Tribes of Indians, 304 U.S. 119, 123, 58 S.Ct. 799, 82 L.Ed. 1219.

The special jurisdictional act under which a judgment was recovered in this court, Blackfeet Nations v. United States, 81 Ct.Cl. 101 reads:

"*Be it enacted* * * * That jurisdiction is hereby conferred upon the Court of Claims, with right of appeal to the Supreme Court of the

United States, to consider and determine all legal and equitable claims against the United States of the Blackfeet * * * and Gros Ventre Nations * * * for lands or hunting rights claimed to be existing in all said nations or tribes of Indians by virtue of the treaty of October 17, 1855 (Eleventh Statutes at Large, page 657 and the following) * * * with said Indians, and all claims arising directly therefrom, which lands and hunting rights are alleged to have been taken from the said Indians by the United States * * * and the final judgment and satisfaction thereof shall be in full settlement of all said claims." (43 Stat. 21.)

The House Report No. 64, 68th Cong. 1st Sess. 1, accompanying this bill, which was also adopted without change by the Senate in Senate Report No. 141, 68th Cong. 1st Sess. 1, stated in part:

. "This legislation provides that the Indians who were parties to the treaties above set forth shall be given the right to be heard by the Court of Claims with right of appeal to the Supreme Court of the United States, *for the alleged taking of certain lands* and hunting rights *which were given them under the treaties* of July 16 and October 17, 1855." (Italics ours.)

. Apparently, therefore, under the special jurisdictional act this court had authority to award just compensation, which included interest.

But appellants deny this. They say this Act limited our jurisdiction to determining only those claims that arose directly from the treaty of 1855, and they say a claim for just compensation did not arise from that treaty, although they were awarded a judgment for the taking of their lands. They argue, somewhat obscurely, that this is so because the jurisdictional act did not mention other treaties, Acts of Congress or Executive Orders, as did those jurisdictional acts under which interest has been allowed as a part of just compensation; that the

claim for the principal value of the land arose directly from the treaty of 1855, but that the claim for interest arose from the Constitution when the land was taken for public use by the Act of April 15, 1874, and Executive Order of August 19, 1874.

■ This argument is unsound. Appellants' *right to the land* was given them by the treaty of 1855, but their *claim for just compensation* arose from the taking of the land in 1874. Inasmuch as the treaty of 1855 was the basis of appellants' property rights in the land, any claims that arose from a violation of those rights "arose under or grew out of" that treaty. The treaty in and of itself did not give rise to a claim for anything. A claim did not arise for either the principal value of the land or interest until the rights granted by this treaty were violated by the taking in 1874. At that time a claim arose under the Fifth Amendment to the Constitution for just compensation, which included the right to interest as well as the principal value of the land. When the taking precedes the payment of compensation, the right to interest as an element of just compensation under the Fifth Amendment is inseparable from the claim for the principal value of the land—they arise at the same time—from the same source—each being a component part of just compensation. Seaboard Air Line Ry. Co. v. United States, supra; Brooks-Scanlon Corp. v. United States, supra; Phelps v. United States, supra; Jacobs v. United States, supra; United States v. Creek Nation, supra; Shoshone Tribe of Indians of Wind River Reservation in Wyoming v. United States, supra; United States v. Klamath and Moadoc Tribes of Indians, et al., supra.

In the Shoshone Tribe of Indians case, supra, the question was whether interest should be allowed in an Indian just compensation case, where the jurisdictional act was silent thereon. The United States had by treaty of July 3, 1868, 15 Stat. 673, " * * * set apart for the absolute and undisturbed use and occupation of the Shoshonee Indians * * *"

the Wind River Reservation. The United States subsequently settled the Arapahoe Indians upon half of the reservation, without the consent of the Shoshone Indians. This action was later ratified by various actions on the part of Congress. The Shoshones sought and obtained the passage by Congress of a special jurisdictional act conferring upon this court jurisdiction to grant an award not only for the value of the land when taken but also interest for the delay in payment, but the President vetoed the bill, primarily because of the inclusion of interest. A new bill was passed which was silent as to interest. In the suit brought thereunder this court granted an award for the principal value of the land, but denied the interest. Shoshone Tribe of Indians of Wind River Reservation in Wyoming v. United States, 82 Ct.Cl. 23. The Supreme Court reversed and allowed interest. In its opinion (299 U.S. 476, 497, 57 S.Ct. 244, 251, 81 L.Ed. 360) it said:

> "Finally the fact is unimportant, there having been an appropriation of property within the meaning of the Fifth Amendment, that the jurisdictional act is silent as to an award of interest or any substitute therefor. United States v. Creek Nation, supra, 295 U.S. 103, at pages 110, 111, 55 S.Ct. 681, 684, 79 L.Ed. 1331; Cf. Yankton Sioux Tribe [of Indians] v. United States, 272 U.S. 351, 359, 47 S.Ct. 142, 144, 71 L.Ed. 294. Given such a taking, the right to interest or a fair equivalent, attaches itself automatically to the right to an award of damages. Jacobs v. United States, supra; Phelps v. United States, 274 U.S. 341, 47 S.Ct. 611, 71 L.Ed. 1083; Brooks-Scanlon Corp. v. United States, 265 U.S. 106, 123, 44 S.Ct. 471, 474, 68 L.Ed. 934; Seaboard Air Line [Ry.] Co. v. United States, 261 U.S. 299, 306, 43 S.Ct. 354, 356, 67 L.Ed. 664. * * * *"

■ We think it is beyond doubt that this court in the prior suit in this court had jurisdiction under the special juris-dictional act to award interest to appellants as a part of just compensation.

Since this court had jurisdiction to award interest as a part of just compensation in the former case, the judgment, having been upon the merits, is an absolute bar to further litigation between the same parties, not only in respect to every matter which was actually advanced to support the claim, but also as to every matter which could have been advanced. Cromwell v. County of Sac, 94 U.S. 351, 24 L.Ed. 195; Stark v. Starr, 94 U.S. 477, 24 L.Ed. 276; Western (Old Settler) Cherokee Indians ex rel. Owen v. United States, 89 F.Supp. 1006, 116 Ct.Cl. 665, certiorari denied 340 U.S. 904, 71 S.Ct. 279, 95 L.Ed. 654; Choctaw Nation v. United States, 91 Ct. Cl. 320, 390, certiorari denied 312 U.S. 695, 61 S.Ct. 730, 85 L.Ed. 1130; Cook & Co. v. United States, 80 Ct.Cl. 708; International Curtis Marine Turbine Co. v. United States, 56 F.2d 708, 74 Ct.Cl. 132.

### The Defense of Res Adjudicata under the Indian Claims Commission Act.

■ The section of the Indian Claims Commission Act, supra, pertaining to defenses available to the United States provides:

> "Sec. 2 * * * All claims hereunder may be heard and determined by the Commission notwithstanding any statute of limitations or laches, but *all other defenses shall be available to the United States.*" [Italics ours.]

Appellants contend that the intention of Congress was to disallow *res adjudicata* as a defense to a claim which could have been, but in fact was not, presented to the court under a prior jurisdictional act, although it was an integral part of the claim asserted in the prior suit.

The appellee contends that this provision of the Act is clear and unambiguous, and on its face permits the defense of *res adjudicata,* and, therefore, resort to the legislative history is unnecessary, but it further says that the intention of

Congress to bar the type of claim now being presented is clearly shown by the legislative history of the Act.

We think appellee is correct. The hearings of both Houses, the debates on the floor of both Houses, the Senate Report, the Conference Report, and the Act itself clearly indicate that those Indian tribes which had had their day in court and had had their claims adjudicated on the merits should not be permitted to revive or reopen those cases.[2] Western (Old Settler) Cherokee Indians ex rel. Owen v. United States, supra.

The appellants concede this, but contend that their claim for interest was not adjudicated on its merits. They contend that they are not reopening the prior case and asking for additional damages, but rather are standing on that decision and asking for the adjudication of a separate and additional claim. With this we do not agree.

The appellants' claim for interest as a part of just compensation is not a separate claim. No cause of action exists for interest in and of itself. Interest is merely a component part, an element of the claim for just compensation, and, so, the appellants are in fact asking the Commission to reopen the former case and award additional damages on that claim which was tried on its merits and from which the right of appeal was not exercised. Since appellants have had their day in court and have had their claim for just compensation adjudicated on its merits they are barred from reopening that case.

As passed by the House, the language of the part of section 2 that dealt with defenses was unclear and susceptible to more than one interpretation. It read:

"No claim shall be excluded from consideration on the ground that it has become barred by law or any rule of law or equity, or that it is barred by any statute of limitations or by laches, but no claim shall be considered by the Commission, where a final determination upon an issue of law or fact involved has been made on the merits of such issue by any court of the United States in a proceeding with respect to such claim."

During the hearings before the Senate Committee on Indian Affairs the Department of Justice proposed that the language of this section be deleted and that the following language be substituted therefor:

All claims hereunder may be heard and determined by the Commission notwithstanding any statute of limitations or laches, but all other defenses shall be available to the United States."

Its purpose in proposing this amendment, as stated by Assistant Attorney General Williams, was to allow the United States to assert the defenses of res adjudicata and accord and satisfaction. (Senate Hearings, supra.)

The language proposed by the Department of Justice was adopted. There was no suggestion during the hearings and debates, or in the House, Senate or Conference Reports, of an intention to deprive or to limit the defense of res adjudicata.

The Senate Report on the bill states

"Defenses permitted by Government. The amendments made by the committee * * * clarify the provisions with respect to the defenses permitted to the Government. It is understood that the bill as it passed the House was intended to permit all defenses to the Government except the plea of statute of limitations or laches, and as amended this is made clear in the bill."

2. Hearings before the Committee on Indian Affairs, House of Representatives, on H.R. 1198 and H.R. 1341, 79th Cong., 1st Sess., 33–34, 62–63 (1946); Hearings before the Senate Committee on Indian Affairs on H.R. 4497, 79th Cong., 2d Sess., 12–13, 16–18, 21, 33, 58–59 (1946); 92 Cong.Rec. 5307–5308, 5314–5315, 5317, 5319–5320, 5322, 9217–9218 (1946); Sen.Rep. No. 1715, 79th Cong., 2d Sess. 6 (1946); H.R.Conf.Rep.No. 2693, 79th Cong., 2d Sess. 1 (1946).

The Conference Report states:

"* * * that the House recede from its disagreement to the amendments of the Senate numbered * * 5. [the one allowing all defenses except statute of limitations or laches] * * * and agree to the same. * * * "

Appellants rely on the following statement of the House managers:

"Nor is this amendment intended to preclude the adjudication by the Commission of any claim authorized to be heard and determined under this section which has not been in fact previously adjudicated or settled on its merits. * * *." [92 Cong.Rec. 10402 (1946) ]

We do not see that this gives any indication of Congress' intention in the situation with which we are confronted in this case.

They also rely on the supplemental report signed by the House managers, which was filed as an extension of remarks in the Appendix of the Congressional Record on August 12, 1946 (92 Cong.Rec.App. A4923–4924), 16 days after the Conference Report had been approved by the Senate, 14 days after the Conference Report had been approved by the House, and 10 days after Congress had adjourned. It states, in part:

"* * * Neither does it mean that *causes of action* which could have been brought under prior jurisdictional acts, but which were not, can be defeated. Only cases which have been actually tried before the courts and settled on their merits under both the jurisdictional features of the particular jurisdictional act and the jurisdictional language of this act are precluded from determination by the Commission. *Thus*, where an Indian tribe has already recovered for the value of land taken from it, the Commission will be permitted to entertain a claim for just compensation where no such claim was actually litigated by the tribe. Again, the previous assertion of a claim for interest, which could not be awarded because of existing provisions of law, shall not preclude the claimant from hereafter raising before the Commission a claim for interest as a part of just compensation in the constitutional sense on the principal sum already obtained. * * * "

If this supplemental report can be construed to mean that a tribe which had recovered the principal value of their lands, could later maintain a suit for interest thereon, nevertheless, it represents only the intention of those Congressmen whose signatures appear thereon, but such an intention cannot be imputed to the Congress because it was never brought to the attention of Congress. So construed, it is at variance with the Senate committee and the Conference committee reports, which stated that the purpose of the amendment of the House Bill was to make it plain that it was intended to reserve to the United States all defenses except the statute of limitations or laches.

The legislative history of the Act does not persuade us that the intention of Congress was different from that indicated by the language of the Act.

*Fair and Honorable Dealings.*

██ Appellants' third argument is that it can maintain this action under clause (5) of section 2 of the Indian Claims Commission Act, supra. That clause provides:

"* * * claims based upon fair and honorable dealings that are not recognized by any existing rule of law or equity. * * *"

Appellants contend that, since interest has been allowed other Indian tribes under special jurisdictional acts, the United States has dealt unfairly and dishonorably with the appellants in not having allowed them interest as a part of just compensation.

This contention is without merit. Clause (5) has reference to moral claims which were not recognized by any rule

of law or equity. If a tribe was not entitled to recover under any rule of law or equity, it still might recover under clause (5); but if its claim was recognized by a rule of law or equity, then clause (5) has no application. Appellants' claim for interest as a part of just compensation was a claim recognized by law, and, hence, was not included in that class of claims mentioned in clause (5).

In Western (Old Settler) Cherokee Indians ex rel. Owen v. United States, 89 F.Supp. 1006, 1012, 116 Ct.Cl. 665, 678, we said:

> "* * * Clause (5) was intended, as its language clearly shows, when considered in the light of its history and other provisions of Section 2, to cover only moral claims based on justice and fair dealings or broad principles of equity and justice, with respect to which no court had theretofore made a determination on the merits, or could have made such a determination under the terms of prior jurisdictional acts. * * *"

In Osage Nations of Indians v. United States, 97 F.Supp. 381, 119 Ct.Cl. 592, 669–671, certiorari denied 342 U.S. 896, 72 S.Ct. 230, 96 L.Ed. 672, relied on by appellants, we merely held that the appellants could plead their claim under clause (3) and also plead it in the alternative under clause (5), and if it developed at the trial that their claim was not recognized under any rule of law or equity they were entitled to have it considered under clause (5). Appellants' claim in this case was one well recognized under established legal principles, and, hence, does not come within clause (5).

We hold that this court had jurisdiction under the special jurisdictional act to award interest as a part of just compensation in the former case; that the claim now being presented is but an element of that claim for just compensation which has been adjudicated on its merits; that the intention of Congress as manifested by the Act and legislative history was to reserve to the United States all defenses except the defense of the statute of limitations or laches, and, therefore, to permit the defense of res adjudicata in its entirety. The "fair and honorable dealings" clause has no application to the facts of this case.

The final determination of the Indian Claims Commission sustaining the motion of the United States for summary judgment and dismissing appellants' claim is affirmed.

JONES, Chief Judge, and LITTLETON, Judge, concur.

MADDEN, Judge.

I think the court is in error in affirming the decision of the Indian Claims Commission dismissing the appellants' first claim on the ground of res adjudicata.

The purpose of the Indian Claims Commission Act was to close out the claims of Indian tribes for ancient wrongs, real or supposed, to which they had been subjected by the white man's Government. It was the intention of everyone concerned with the legislation that, instead of each tribe having to lobby for a special jurisdictional act waiving the statute of limitations and conferring jurisdiction upon this court to hear and decide that tribe's particular case, there should be a general waiver and a right in all tribes to be heard by a tribunal, the Indian Claims Commission, which could devote its full time to the consideration of the cases and get them decided, once and for all time, subject to appellate procedures in this court and the Supreme Court of the United States.

In the debates and discussions in the House of Representatives preceding the enactment of the Act the conclusion was reached that claims which had already had their day in court, on their merits, should not be reopened to the new procedure. That obviously reasonable conclusion was written into the House Bill by an amendment offered by Congressman Taber which read as follows:

> "But no claim shall be considered by the commission where a final de-

termination upon an issue of law or fact involved has been made on the merits of such issue by any court of the United States in a proceeding with respect to such claim." Cong. Rec. May 20, 1946, p. 5322.

Let us now suppose that the facts of the instant case had been presented to the House in the debate, and the question had been raised as to whether the Indian Claims Commission would have jurisdiction to entertain the claim. The appellant tribes owned a reservation given to them by a treaty in 1855. Some 12,-000,000 acres of this reservation were taken from the tribe, without its consent and without compensation, by the Government in 1874. In 1924 Congress enacted a special jurisdictional act authorizing the plaintiffs to sue in this court on their claim for the land taken. A general statute provided that no interest should be allowed on a claim against the Government unless a statute or a contract provided for such interest. There was a settled judicial doctrine that jurisdictional acts authorizing suits against the Government are to be strictly construed. There was no case in which this court had ever awarded interest to an Indian Tribe in a suit against the Government for land taken. The tribes' lawyers did not even ask for interest in their suit. The court in 1935 determined the 1874 value of their land and gave them a judgment for that value, which judgment was paid in due course. The tribes had been deprived of their land more than 60 years before the judgment was rendered. Yet they received not a cent as compensation for their having had, for more than 60 years, neither the land nor its value in money. This court had not given, nor been asked to give, the slightest consideration to the question whether the tribes were entitled to be compensated for the deprivation. The reason obviously was that under the legal doctrines prevalent at the time, the able lawyers for the tribes concluded that it would have been futile to have asked for interest.

The question for the House would have been "Has a court made a final determination on the merits of the right of the tribes to compensation for the 60 years delay in getting paid for their land?" The answer would have been that no court had even been asked to give the slightest consideration to the question, and of course had not determined it "on the merits" or otherwise. If someone had sought to introduce into the debate the legal doctrine of *res adjudicata*, that the tribes could have asked for interest, though knowing that they would not get it in this court; could have tried to obtain a review of the interest question in the Supreme Court, foreseeing that some years later that court would render a decision allowing such interest, it would have been obvious that that member of Congress had not caught the purpose and spirit of the Indian Claims Commission Act; that the discussion related to the susbtance of Indian claims, not to abstruse and technical legal doctrines.

In the Senate, at the recommendation of the Department of Justice, other language was substituted for the Taber amendment. It said:

"All claims hereunder may be heard and determined by the Commission, notwithstanding any statute of limitations or laches, but all other defenses shall be available to the United States."

The representative of the Department of Justice at the Senate Committee hearing stated categorically to the committee that no change was intended by the substitution, but only a clarification. Senate Hearings on H.R. 4497, 79th Cong. 2d Sess., July 13, 1946, pp. 58, 59.

The substituted language was adopted by the Senate, the Bill went to Conference; the Senate version was adopted by the Conference Committee; and the Bill was passed. The House Managers, in their report to the House, stated that the Senate amendment was not intended to preclude the adjudication by the Commission of any claim which had not been

in fact previously adjudicated or settled on its merits. House Report No. 2693, 79th Congress, p. 6. On behalf of the House Managers, when the conference report was taken up in the House, it was said that they might file a supplemental statement later, they having been pressed for time in making the deadline for their statement already filed. Cong. Rec. July 29, 1946, p. 10403. They did file a supplemental statement in which they said, among other things, that the substitution of the Senate amendment did not mean that causes of action which could have been brought under prior jurisdictional acts, but which were not brought, were barred. They referred, by way of illustration, to a case where a tribe had recovered the value of land taken but had not litigated the question of just compensation for delay in payment. They said that such a claim would not be barred by the Senate amendment. In filing the supplemental statement, it was said, for the House Managers, that numerous requests had been made by colleagues for an authoritative statement as to the effects of the Senate amendment and as to other parts of the Conference report, and that, in confirmation of informal explanations already made to their colleagues, they had prepared the supplemental statement. Cong.Rec. August 12, 1946, A 4923.

In the circumstances, it seems to me quite conclusive that those who had charge of the legislation on the House side supposed that they had obtained a statute which barred only claims which had in fact been litigated and decided, and not those which might, in ordinary litigation, be barred on the technical ground that they might have been litigated and decided in a prior action. And not only those who had charge of the legislation, but other members who had inquired of them, had been led to approve the Conference report by their assurance as to what the Senate amendment meant. In the Senate the Committee had been assured by the Department of Justice that the Senate amendment did not change at all the meaning of the House version which had said expressly that only claims previously determined on their merits would be barred. So far as appears, the Senate passed the bill relying on that assurance.

The interpretation for which the Government now contends seems to contradict the intention of every person in the Congress who had anything to do with the legislation. It contradicts the purpose of the Indian Claims Commission Act, to get the claims of the Indians decided so that it can be said to them, "You have had your day in Court. Your case has been heard and deliberated upon by a responsible tribunal and it will not be heard again." Under the court's decision of today, the only answer which can be given to these appellants will be "Res adjudicata." I should suppose that the more this cryptic expression is explained to them, the less clear they will be as to what has happened to their constitutional rights.

The doctrine of res adjudicata is a doctrine of repose. But the Indian Claims Commission Act is a statute of repose. As interpreted today it will not bring repose. The right to petition for a redress of grievances is not subject to the doctrine of res adjudicata.