This case comes before the court on defendant’s motion to dismiss plaintiffs’ Exception No. 25 on the grounds of res judicata and statute of limitations. It is one of several related cases brought under the Indian Claims Commission Act of 1946, 25 U.S.C. §70 et seq., 60 Stat. 1049, docket Nos. 19, 188, 189-A. 189-B, 189-C, and 19 and 189-A consolidated.
Plaintiffs, by Exception No. 25, seek to hold the government liable "[f]or failure to pay compensation for the value of flowage easements over tribal lands, which flowage easements were acquired pursuant to the Act of June 7, 1897, ch. 3, 30 Stat. 62,. 67, without the consent of the Tribe.” The tribal lands here in question are trust lands ceded to the United States under the Nelson Act of 1889, ch. 24, 25 Stat. 642. Under the Nelson Act, the United States would sell timber and land in accordance with the terms of that act and credit the proceeds realized from such sales to the Chippewa. Until the timber and land were disposed of, the Chippewa bands remained the beneficial or equitable owners of said lands.
The Act of June 7,1897, subjected Nelson Act lands:
To the right of the United States to construct and maintain dams for the purpose of creating reservoirs in aid of navigation, and no claim or right of compensation shall accrue from the overflowing of said lands on account of the construction and maintenance of such dams or reservoirs * * *.
Plaintiffs assert that the 1897 Act was a unilateral action by Congress; no consent by the Chippewa bands was sought, required, or given; and no compensation was ever paid for acquisition of the flowage easement. Plaintiffs’ claim sets out on its face a claim for just compensation under the fifth amendment for the value of a flowage easement imposed by the Act of June 7,1897.
As its res judicata defense, defendant asserts that this claim is foreclosed because it could and should have been determined in previous litigation brought under a special jurisdictional act, approved May 14, 1926, 44 Stat. 555, as amended by acts of April 11, 1928, 45 Stat. 423, and June 18, 1934, 48 Stat. 979, which entitled this court to adjudicate all legal and equitable claims under the provisions of *778 the Nelson Act of 1889, or any subsequent act, asserted by the Minnesota Chippewa against the United States. Chippewa Indians of Minnesota v. United States, 80 Ct. Cl. 410 (1925), aff'd, 301 U.S. 358 (1937) [hereinafter cited as No. H-76]; Chippewa Indians of Minnesota v. United States, 87 Ct. Cl. 1 (1938), aff'd, 305 U.S. 479 (1939) [hereinafter No. H-192]; Chippewa Indians of Minnesota v. United States, 88 Ct. Cl. 1 (1938), aff'd, 307 U.S. 1 (1939) [hereinafter No. H-155]; Chippewa Indians of Minnesota v. United States, 90 Ct. Cl. 140 (1940) [hereinafter No. H-163]; Chippewa Indians of Minnesota v. United States, 91 Ct. Cl. 97 (1940) [hereinafter No. H-135] [hereinafter collectively referred to as the Nelson Act cases.]
For its defense of statute of limitations, the government asserts that the instant lawsuit, docket No. 188, was brought under the Indian Claims Commission Act, 25 U.S.C. §70 et seq.; the relevant section, §70k provides that any claim alleged under the Act, is time-barred if it is filed at a date beyond August 13, 1951; Exception No. 25 was first filed and alleged in January of 1980, more than 28 years beyond the limitations date. Based on the foregoing, defendant concludes that since the claim alleged in Exception No. 25 does not relate back to the claims alleged in the original petition, it is untimely and therefore time-barred. Answering, plaintiffs oppose defendant’s motion to dismiss.
I
First, we address defendant’s assertion of res judicata as a ground for its motion to dismiss Exception No. 25. Defendant contends that the claim raised in Exception No. 25 could have been and should have been brought in one of the five cited Nelson Act cases, particularly No. H-192. All five sought accountings of the government’s administration of Nelson Act funds and lands:
(a) No. H-76, filed February 26,1927, was a suit seeking to include the value of the diminished Red Lake Reservation in the Nelson Act trust for the benefit of all the Chippewa Indians of Minnesota. The claim was dismissed on the ground that the diminished reservation was the exclusive property of the Red Lake Band and not a part of the trust.
*779 (b) No. H-192, filed May 5, 1927, was a suit for the value of trust lands and timber allegedly taken by the government under an amendment to the Nelson Act creating a national forest. The court held that a taking had occurred, but that the timber and lands in question had no value at the time they were appropriated, and so dismissed plaintiffs’ claim.
Plaintiffs also filed a claim for the taking of land from the Red Lake Reservation by reason of an erroneous survey conducted prior to the date of the Nelson Act. The grant of jurisdiction in the 1926 Act was held limited to Nelson Act and subsequent matters, and this claim was accordingly dismissed for lack of jurisdiction.
(c) No. H-155, filed April 13,1927, was a suit charging the government with wrongful disbursement of Nelson Act trust monies. The claim was dismissed on the ground that the trust created by the 1889 Act was not a conventional one and that Congress could depart from the Act’s terms.
(d) No. H-163, filed April 21, 1927, was a suit alleging the unlawful allotments of trust lands by the government. The claim was dismissed on the ground that the allotments of the lands in question were lawfully made pursuant to legislation subsequent to the Nelson Act, which Congress was empowered to enact.
(e) No. M-135, filed May 7, 1931, was a suit to restore to the trust the value of timberlands disposed of by the government for less than their value. The court awarded the plaintiffs damages, which, however, were reduced to nothing by gratuitous offsets.
The special jurisdictional act approved May 14, 1926, 44 Stat. 555, as amended by the Acts of April 11, 1928, 45 Stat. 423 and June 18,1934, 48 Stat. 979, provides in part:
That jurisdiction be, and is hereby, conferred upon the Court of Claims, with right of appeal to the Supreme Court of the United States by either party as in other cases, notwithstanding the lapse of time or statutes of limitations, to hear, examine, and adjudicate and render judgment in any and all legal and equitable claims arising under or growing out of the [Nelson] Act of January 14, 1889 * * * or arising out of any subsequent Act of Congress in relation to Indian Affairs which said *780 Chippewa Indians of Minnesota may have against the United States * * *.
Thus, as the taking claim in Exception No. 25 is presented, it falls squarely within the above-quoted language. That is to say plaintiffs’ taking claim arises by virtue of the operation of a "subsequent Act of Congress,” the 1897 Act on, their Nelson Act lands. In Shoshone Tribe v. United States, 299 U.S. 476 (1937), the Supreme Court upheld the right to just compensation for a taking in the Shoshone Tribe, based on a special jurisdictional statute which paralleled in language and substance, the above-quoted passage from the 1926 jurisdictional statute. Id. at 484, n. 1, 497. See also Blackfeet & Gros Ventre Tribes v. United States, 127 Ct. Cl. 807, 811-12, 119 F.Supp. 161, 163-64, cert. denied, 348 U.S. 835 (1954). Therefore, unless Lone Wolf v. Hitchcock, 187 U.S. 553 (1903), and its progeny operate to foreclose plaintiffs’ taking claim, we have no difficulty in agreeing with defendant that the 1926 jurisdictional act permitted a taking claim and that it should have been asserted as one of the Nelson Act cases, especially as part of No. H-192.
Lone Wolf, supra, possibly would operate to foreclose plaintiffs’ claim for a taking "if the Congress, exercising its plenary power over Indian Tribes, took their land without their consent and substituted for it something conceived by Congress to be an equivalent.” United States v. Sioux Nation, 207 Ct. Cl. 234, 243, 518 F.2d 1298, 1303, cert. denied, 423 U.S. 1016 (1975). In Exception No. 25 plaintiffs do not admit that any quid pro quo was provided at the time they allege that the 1897 Act operated as a taking. Thus, the 1897 Act was not, even ostensibly, an act in management of Indian property. In fact, the plaintiffs claim that they received nothing as of the effective date of the act. Plaintiffs’ taking claim herein would surely come under the Shoshone, supra, line of cases "where the Indian land was taken * * * without any real or purported equivalent.” United States v. Sioux Nation, 207 Ct. Cl. at 243, 518 F.2d at 1303. Thus, it is clear that plaintiffs’ taking claim asserted in Exception No. 25 could have been raised under the special jurisdictional act of 1926.
*781 We may assume arguendo that under a broad and general consent to suit, lack of success with one claim would not create a res judicata bar to a wholly unrelated and different claim just because it could have been sued upon. Here we have a consent that was not broad and general, but identified a specific category of claims all closely related to each other, all arising out of the Nelson Act or out of "subsequent Acts of Congress” affecting Chippewa affairs. Section 2 of the 1926 act expressly stated that "any and all claims within the purview of this Act shall be forever barred” if not sued on within five years. This is Congress’ statement of how res judicata is to operate in this context. It would not be appropriate for us now to say it operates in some other fashion. When Congress has thus indicated its own belief that certain claims, namely those arising out of the Nelson Act, are related, and if not sued on are barred, it is not correct to say that a claim that could have been sued on but was not is unrelated. Any taking suit arising out of the Nelson Act or out of subsequent legislation that could have been brought under the 1926 Act is so closely related to any other taking suit arising out of the Nelson Act that res judicata will bar it if the suit was not brought. We therefore hold that to the extent plaintiffs’ Exception No. 25 alleges a taking claim, such a claim is barred by the res judicata effect of No. H-192.
Lest our holding be misunderstood, it must be emphasized that it does not foreclose on res judicata grounds the opportunity of plaintiffs to litigate facts underlying their Exception No. 25 claim insofar as they are founded on the Indian Claims Commission Act, Section 2, Clauses 3 and 5, 25 U.S.C. §70a(3)(5). See United States v. Sioux Nation, 207 Ct. Cl. at 249, 513 F.2d at 1306. Our holding confirms our intimation in Red Lake Band v. United States, 229 Ct. Cl. 272, 667 F.2d 73 (1981), wherein it was stated that "while res judicata applies to cases brought under the 1946 Act, it does so only in a limited sense. Clause 4 for example-taking-is a cause of action cognizable prior to the 1946 Act and appears to be identical under both acts. Clauses 3 and particularly 5, on the other hand, are new. Thus, even though a 1946 claim arises out of exactly the same facts as a *782 1926 (Nelson Act) claim, the 1946 claim is a new cause of action and not barred by res judicata if it is brought under clause 3 or 5.” (Footnotes omitted, 229 Ct. Cl. at 275, 667 F.2d at 75.) Paragraph 5 of docket No. 188 invokes the 1946 Act generally, and, construing the pleadings so as to do substantial justice (Rule 32(b)), we conclude that it alleges a clause 3 or 5 cause of action. Defendant does not seriously challenge this jurisdictional allegation in its motion, therefore there is no bar.
Defendant asserts that the facts underlying the fifth amendment taking claim, as raised in Exception No. 25, was not a new cause of action contemplated under the fair and honorable dealings provision of the Indian Claims Commission Act of 1946, section 2, clause 5. Thus, it says the exception should be dismissed in its entirety. Defendant cites Blackfeet & Gros Ventre Tribes v. United States, supra, as support for this position.
There is language in Blackfeet which, if taken out of context and without regard for our other precedents, would support defendant’s position. The passage in Blackfeet most pertinent to defendant’s position reads as follows:
* * * Clause (5) has reference to moral claims which were not recognized by any rule of law or equity. If a tribe was not entitled to recover under any rule of law or equity, it still might recover under clause (5); but if its claim was recognized by a rule of law or equity, then clause (5) has no application. Appellants’ claim for interest as a part of just compensation was a claim recognized by law, and, hence, was not included in that class of claims mentioned in clause (5). [127 Ct. Cl. at 818, 119 F. Supp. at 167-68.]
The context in which the passage was written was one where appellants in a later suit sought to recover interest on sums received as a just compensation award in previous litigation. The court held that the fair and honorable dealings clause could not be used to revive the claim for interest because the claim for interest on just compensation was well recognized under legal principles, and it should have been asserted at the time the taking claim was heard. Nowhere in the opinion does the court suggest that facts underlying a taking claim cannot be asserted to state a fair *783 and honorable dealings claim. Yet this is precisely what defendant would have us conclude the above-quoted passage means.
The term "recognized” as used in Blackfeet quite obviously meant "allowable.” The court pointed out in its opinion that interest was allowable on an Indian just compensation award citing numerous authorities. 127 Ct. Cl. at 813, 119 F.Supp. at 163. Thus, if the claim was allowable at law or equity, then clause (5) has no application. Interest was clearly allowable at law, therefore clause (5) had no application. This meaning is made even clearer when we examine the court’s reference to Osage Nation v. United States, 119 Ct. Cl. 592, cert. denied, 342 U.S. 896 (1951). The court stated:
In Osage Nation * * * relied on by appellants, we merely held that the appellants could plead their claim under clause (3) and also plead it in the alternative under clause (5), and if it developed at the trial that their claim was not recognized under any rule of law or equity they were entitled to have it considered under clause (5). Appellants’ claim in this case was one well recognized under established legal principles, and, hence, does not come within clause (5). (Emphasis supplied.) [127 Ct. Cl. at 818-19, 119 F.Supp. at 168.]
If we look at the language in the court’s Osage Nation opinion, supra, which the Blackfeet court construed, the meaning of "recognized” as used by the Blackfeet court accords with this interpretation. In Osage Nation the court stated: "[w]e cannot agree with the Commission that the word 'recognized’ was used in the sense of 'triable.’ We believe it means that if, at the outset, a claim is not cognizable, or if at the trial it is not proved [hence allowable] and, therefore, decided favorably to petitioner under rules of law and equity, then petitioner is entitled to have it considered under the fair and honorable dealings clause.” (Emphasis supplied.) [119 Ct. Cl. at 670.]
Similarly, in this case, plaintiffs’ taking claim is not allowable because of the res judicata bar, but they are entitled to have the same facts, alleged to be a taking, considered under the fair and honorable dealings clause.
This result is in harmony with many of our other decisions. See e.g., United States v. Sioux Nation, 207 Ct. Cl. *784 234, 518 F.2d 1298, cert. denied, 423 U.S. 1016 (1975); Creek Nation v. United States, 168 Ct. Cl. 483 (1964). In both of these cases Indian plaintiffs were allowed to assert facts underlying a claim for just compensation as a fair and honorable dealings claim.
II
We next turn to defendant’s second ground for its motion to dismiss, that plaintiffs’ claim as raised by Exception No. 25 is time-barred.
The issue as framed for our decision is "'whether the newly-stated claim has been "presented” in the original petition,” i.e., whether "the adverse party [was] given formal and reasonable notice that a claim is being asserted against it.’” Northern Paiute Nation v. United States, 218 Ct. Cl. 699 (1978) (quoting United States v. Lower Sioux Indian Community, 207 Ct. Cl. 492, 502-03, 519 F.2d 1378, 1383 (1975); Snoqualmie Tribe of Indians v. United States, 178 Ct. Cl. 570, 587, 372 F.2d 951, 960 (1967). Comparison of the original petition with the claim asserted in Exception No. 25 shows that the latter claim was "presented” and that the defendant had reasonable notice of said claim.
In our Snoqualmie opinion, supra, we stated "that 'presented’ should be read liberally to permit an amended pleading to relate back where there is sufficient notice.” 178 Ct. Cl. at 588, 372 F.2d at 961. With the background of liberal construction in mind, we proceed to the merits of defendant’s arguments.
Defendant contends that there is nowhere in the original complaint even a hint of a claim for a taking due to the unilateral imposition by Congress of flowage easements on plaintiffs’ trust lands. Further, defendant states "[a]ll claims relating to construction of dams asserted in the original petition dealt with pre-Nelson Act (1889) claims.” We disagree.
In the case at bar, the allegations set forth in the original petition gave defendant reasonable notice of the 1897 Act flowage easement claim. Paragraph 6 thereof states:
This action is brought to determine the rights and claims of plaintiffs arising out of the administration of *785 the property and affairs of plaintiffs and to recover damages sustained thereby * * * to obtain an accounting for all property * * * coming into the possession of, held and/or administered by defendant for plaintiffs and their predecessors.
Count II of the original petition realleges all of the preceding allegations, including the above-quoted paragraph 6, and further alleges that "[a]n act of Congress of June 6, 1880 * * * and other acts of Congress authorized the construction of dams upon the Mississippi River and other waters * * *” and pursuant to those acts dams were built flooding large areas of plaintiffs’ lands. Plaintiffs further allege that they have not been compensated for damages due to the flooding.
Paragraph 29 of Count III of the original complaint states:
Plaintiffs are entitled to an accounting for all property and money belonging to plaintiffs which have come into the hands of defendant or under its control belonging to the various bands of Minnesota Chippewa Indians or arising out of the reservations of the Minnesota Chippewa Indians.
These allegations, taken together with all the provisions of the complaint put defendant on notice that plaintiffs were seeking "an accounting for all property and money belonging to plaintiffs” in the control of the government. The tribal trust lands flooded by dams were in government control and had come into government hands.
It is apparent from the face of the 1897 Act that its purpose was to permit the government to build dams and to extinguish any claim for damage to lands or for just compensation due to the construction and maintenance of any such dam.
Construing the petition liberally, we therefore conclude that plaintiffs’ original petition presented in a broad manner their claim as stated in Exception No. 25, and, of course, as limited by part I of this order.
it is therfore ordered that defendant’s motion to dismiss plaintiffs’ Exception No. 25 is granted to the extent that Exception No. 25 raises a claim for a fifth amendment taking but denied to the extent that it states a claim for *786 relief under Indian Claims Commission Act, section 2, clause 5.
May 21,1982