LittletoN, Judge,
delivered the opinion of the court:
This case was heard and submitted under Rule 39 (a) upon the question of plaintiffs' right to recover. The questions with reference to the value of property, which plaintiffs allege was unlawfully allotted, and as to such offsets as might be proper, in the event plaintiffs should be held entitled to recover, were reserved for future consideration, if necessary. No findings have therefore been made with respect to these questions.
*147 Under the civilization act of 1889, all the bands and tribes of the Chippewa Indians in Minnesota living on twelve distinct reservations ceded to the United States, in trust, under an agreement duly entered into pursuant to an Act of Congress, all their title and interest in and to the reservation occupied by them, except the White Earth and Red Lake reservations, as to which a portion of each was reserved from the cession and the remainder ceded to the United' States in trust for disposition for the benefit of the Indians. This' act provided for the removal to the White Earth Reservation of all other Indians from all other reservations, except the Red' Lake Reservation, and it further provided for allotments in conformity with the.Act of 1887 on the reserved portion of the White Earth Reservation to the Indians originally there and to those removed. It was provided, however, that any Indian, in his own discretion, might decline to be removed and might take his allotment on the reservation on which he resided. Many of the Indians did so. The general allotment act of 1887, before amendment, provided for an allotment of 160 acres to each head of a family, of 80 acres to each single person over 18 years of age, of 80 acres to each orphan child under 18 years of age, and of 40 acres to each other single person under 18 years of age. Before any allotments had been made under the civilization act of 1889, the general allotment act of 1887 was amended by the Act of February 28, 1891, which fixed 80 acres as the amount of land to be allotted to each person. The Department of the Interior construed the amendatory act of 1891 as amending the previous acts and as fixing the area to be allotted to each Chippewa at 80 acres and allotments were made accordingly.
Allotments of more than 40 acres each were made to single persons under 18 years of age other than orphans, the aggregate excess over the total acreage which the allottees would have received at 40 acres each being 136,487.88 acres, divided as follows: (1) on the reserved portion of the White Earth Reservation, 88,978.74 acres, and (2) on .other reservations, 47,508.14 acres. Plaintiffs seek to recover the value of this excess acreage allotted, at $1.25 per acre.
The Act of April 28, 1904, known as the Steenerson Act, provided that allotments, or sufficient additional allotments, be made from the reserved portion of the White Earth *148 Reservation to the White Earth Indians and to other Minnesota Chippewas who had been removed to the White Earth Reservation and who were entitled to the benefits of the treaty with the Chippewa Indians of Mississippi, proclaimed April 18, 1867, 16 Stat. 719, so that each allottee would receive 160 acres in all.
Additional allotments were made from the reserved portion of the White Earth Reservation under the Act of 1904, of 251,322.64 acres in excess of the total which the allottees would have received at 80 acres each under the Act of 1891. The lands so additionally allotted contained a large quantity of merchantable pine timber. Plaintiffs seek to recover the value of the excess acreage so allotted, together with the value of the timber thereon, in the total amount of $3,600,978.65.
Plaintiffs contend in support of their claimed right to recover for the lands additionally allotted pursuant to the acts of 1891 and 1904 that the civilization act of 1889 and the agreement approved March 4, 1890, made thereunder, obligated the Government to make allotments in strict conformity with the general allotment act of 1887 and that allotments, or additional allotments of increased acreages made, as subsequently directed by Congress, were unlawful and in violation of the acts of 1887, 1889, and the agreement of 1890.
Plaintiff also contends that any surplus lands and the timber thereon remaining on the diminished White Earth Reservation, after allotments had been made in conformity with the acts of 1887 and 1889, became “ceded lands” and, therefore, “trust lands,” to be sold for plaintiffs’ benefit, and that, when additional lands therefrom were allotted to the Chippewas, the defendant violated the trust imposed and plaintiffs became entitled to recover compensation for the value thereof.
On the other hand, defendant contends that the enactment of the civilization act of 1889, and the approval of the agreements made thereunder, did not deprive Congress of its lawful plenary power over the Indian tribes and their properties to direct changes in the amount, or amounts, of land to be allotted to the individual Chippewas, and that the changes which were directed by Congress in the subsequent acts of *149 1891 and 1904, which the Department of the interior effectuated, were lawful and plaintiffs were not injured and are not entitled to recover from the United States the value of the lands additionally allotted. Defendant also contends that the reserved portion of the White Earth Reservation was not ceded under the Act of 1889, or otherwise; that the rights and property interest therein remained in a group of Indians which includes only a portion of all the Chippewa Indians of Minnesota; that the plaintiffs, as all the Chippewa Indians of Minnesota, have never acquired any property interest therein and cannot recover because of the manner in which that area has been managed.
We are of opinion that the position of the defendant is correct and that plaintiffs are not entitled to recover.
The Chippewa Indians of Minnesota were tribal Indians both before and after the enactment of the civilization act of 1889. The property involved was tribal property. Gritts v. Fisher, 224 U. S. 640; Fairbanks v. United States, 223 U. S. 215; Oakes v. United States, 172 Fed. 305; Leecy v. United States, 190 Fed. 289. And these Indians and their properties were at all times prior and subsequent to the Act of 1889 subject to the plenary control of Congress. These questions were submitted and decided adversely to plaintiffs in Chippewa Indians of Minnesota v. United States, 88 C. Cls. 1, affirmed 307 U. S. 1. The present case differs from that case only in that the former was predicated upon the alleged mismanagement of tribal funds, and the proceeds of tribal land and timber, while the instarit case is upon the alleged mismanagement of unsold tribal lands and timber. But whatever form the tribal property takes, its management by Congress is governed by the same principles of law. In Chippewa Indians of Minnesota v. United States, supra, the Supreme Court said:
■ The appellants assert that, by the Act of 1889, Congress abdicated its plenary power of administration of the Chippewas’ property as tribal property, recognized that the reservations of the respective bands were not tribal property, and. agreed to hold the proceeds of the ceded lands in strict and conventional trust for classes of individual Indians in accordance with the program outlined in the Act (p. 3).
*150 ■ If, as the Court of Claims bas found, the Act of 1889, and the cessions made pursuant to it, did not create a technical trust, we are relieved from considering many of the contentions pressed by the appellants * *_ *.
We are of opinion that the Court of Claims was right in its decision that no such trust was created (p. 3).
* sis * * sfc
It is true that, prior to the adoption of the Act of 1889, the tribe had been broken up into numerous bands, some of which held Indian title to tracts in the State of Minnesota. * * * Whether or not the tribal relation had been dissolved prior to its adoption, the Act contemplates future dealings with the Indians upon a tribal basis. It exhibits a purpose gradually to emancipate the Indians * * *. But it is plain that, in the interim, Congress did not intend to surrender its guardianship over the Indians or to treat them otherwise than as tribal Indians (p. 4).
*• ' * * • * • ' , *
We hold that the Act did not tie the hands of Congress so that it could not depart from.the plan envisaged therein,.in the use of the tribal property for the benefit of its Indian wards (p. 5).
Upon the facts disclosed and the authorities cited, it is clear that plaintiffs are not entitled to recover in this proceeding for the reason that the additional allotments involved, and complained of, were lawfully made.
With reference to an additional contention advanced by plaintiffs that the amendatory act 'of 1891 never became applicable to the Chippewa Indians of Minnesota for the reason that the President never directed the manner in which they should consent, it is sufficient to say that the Secretary of-the Interior, acting with reference to a matter appertaining to his especial duty, may be regarded as having spoken and acted for the President in the premises. Wilcox v. Jackson, 13 Pet. 498, 512, 513; Hegler v. Faulkner, 153 U. S. 109, 117; McElrath v. United States, 102 U. S. 426; Weller v. United States, 41 C. Cls. 324, 335; Belt v. United States, 15 C. Cls. 92, 107. Moreover, the Chippewa Indians of Minnesota accepted the additional' allotments made and no. protest was made at the time. Every act with reference to the making of allotments was under the direction of the Secretary of the Interior *151 and while the records of that department do not disclose any vote or agreement prior to actuál allotment, we think a complete consent to the amendatory act of 1891 was nevertheless given by the Chippewa Indians of Minnesota when they, without exception, accepted their allotments thereunder. The manner of giving consent is unimportant when the consent itself is shown to be actual.
The petition must be dismissed, and it is so ordered.
Whitaker, Judge; Williams, Judge; Greek, Judge; and Whaley, Chief Justice, concur.