## The NAVAJO TRIBE

v.

## The UNITED STATES.

### Appeal No. 2–78.

United States Court of Claims.

April 18, 1979.

William C. Schaab, Albuquerque, N. M., attorney of record, for appellant. Paul D. Barber and Sarah W. Barlow, Albuquerque, N. M., of counsel.

Dean K. Dunsmore, Washington, D. C., with whom was Asst. Atty. Gen. James W. Moorman, Washington, D. C., for appellee.

Before KUNZIG, BENNETT and SMITH, Judges.

## ON APPEAL FROM THE INDIAN CLAIMS COMMISSION

### PER CURIAM:

This case is before the court on appeal from the Indian Claims Commission and on requests by the parties for review of the September 1, 1978, opinion of Trial Judge C. Murray Bernhardt. By order of April 4, 1978, the court referred to the trial judge the appeal of the Navajo Tribe to the Commission's decision denying the Tribe's motion to amend its petition to include another claim. He recommended denial of the appeal.

Upon careful consideration of the opinion of the trial judge, the requests for review, and the oral argument, the court is in agreement that, as a matter of law, the trial judge is correct in his recommendation .that the appeal be denied. The court adopts his opinion, with minor modifications, as the basis for its judgment in the case, and affirms the decision of the Commission. The opinion of the trial judge, as modified, follows:

### OPINION OF THE TRIAL JUDGE

BERNHARDT, Trial Judge: The plaintiff appeals from a decision of the Indian Claims Commission denying plaintiff's motion to amend its petition in docket No. 229 to include a "Fifth Amendment" claim for the taking in 1868 of an alleged Navajo interest in the Bosque Redondo Reservation at Fort Sumner, New Mexico. The appeal has been referred to the trial judge for an advisory opinion.[1]

The prime issue is whether the claim sought to be added to the petition is barred by the applicable statute of limitations which requires claims cognizable under the Indian Claims Commission Act to be filed by August 13, 1951, 25 U.S.C. § 70k. The Supreme Court has held that "limitations and conditions upon which the Government consents to be sued must be strictly ob-

---

1. By order of March 24, 1978, the trial judge denied without prejudice plaintiff's counterpart motion to amend the petition in non-accounting claims of docket No. 69 with respect to the same basic Bosque Redondo claim. The purpose was to await disposition of the instant motion. The ruling was not addressed to the merits.

served and exceptions thereto are not to be implied." *Soriano v. United States*, 352 U.S. 270, 276, 77 S.Ct. 269, 273, 1 L.Ed.2d 306 (1957). .

Commencing in 1863 the United States Army forcibly rounded up the bulk of the Navajos from that part of their vast aboriginal lands lying in the Territory of New Mexico and marched them some 300 miles to Fort Sumner, New Mexico, where they were involuntarily detained for the next 4 years in an area which came to be known as the Bosque Redondo Reservation. It lay some 150 miles beyond the nearest boundary of their homeland. The Bosque Redondo Reservation was purportedly created by the Act of June 30, 1864, ch. 177, 13 Stat. 323, which appropriated $100,000 "for the purpose of settling the Navajoe Indians * * * upon a reservation upon the Pecos River, in New Mexico", as well as to provide agricultural implements and seeds, etc., to break and plant farmland, and for subsistence of the Indians to the end of the following fiscal year. The Act did not define the extent or boundaries of the reservation, but authorized its enlargement to the south to include the entire valley of the Pecos River, and directed that it be designated as the "Navajoe and Apache reservation", since it was then intended to harbor both tribes.

Thereafter in 1868 the Navajos were removed from the Bosque Redondo area to the reservation created by the Treaty of June 1, 1868, 15 Stat. 667, which was within the aboriginal area and is occupied to this day as the plaintiff's official home. In the meantime the Bosque Redondo Reservation, if that is what it was, silently expired so far as our record reveals.[2]

In its opinion disallowing the amendment, the Commission observed that according to the plaintiff the United States established in 1864 a Bosque Redondo Reservation for the tribe pursuant to statute, and thereafter pursuant to the 1868 Treaty the United States took back the reservation when plaintiff agreed by Article IX of the 1868 Treaty to "relinquish all right to occupy any territory outside their [1868] reservation." Further, the plaintiff contended before the Commission, as it does here, that under the Commission's Rule 13(b) it may amend the original petition to conform to the evidence it now asserts as to payment for the taking of the Bosque Redondo Reservation, since the new claim arises out of the "event, transaction, or occurrence" set forth in the original petition and so relates back to that and is not barred by the August 13, 1951, deadline for filing claims imposed by Section 70k of the Indian Claims Commission Act. Out-of-time amendments to petitions are sanctioned by the Commission's Rule 13(c) by "relation back" in order to escape the statutory bar if the claim sought to be added "arose out of the conduct, transaction, or occurrence" pleaded in the original petition. Plaintiff admitted to the Commission that the original petition makes no specific claim for the fair value of the Bosque Redondo Reservation, but contended that the defendant had "adequate notice" of the additional claim because the petition and the 1868 Treaty refer to the fact of the confinement of the Navajos at the Bosque Redondo until 1868 when they were moved to the 1868 Treaty reservation, their present home.

In denying the motion to amend, the Commission recited the "monstrous" [meaning "huge"] record of the various Navajo claims compiled since 1951, and that until the filing of plaintiff's motion all of plaintiff's successive attorneys from the start, including current counsel, have concentrated on proving the extent and value of the plaintiff's aboriginal lands which were ceded to the government under the 1868 Treaty for an inadequate consideration. The Commission referred to the description in plaintiff's pleadings of the harsh conditions suffered by the Navajos during their confinement at Bosque Redondo, and their refusal to accept it as a permanent residence. From those facts the Commission concluded that the Navajo Tribe never disclosed in its pleadings a belief that it had a compensable

---

2. The existence of the area as a bona fide reservation is dubious. Fortunately the issue need not be resolved for the purposes of this motion.

interest in the Bosque Redondo; witness the omission in the pleadings of any mention either of ownership of a reservation there, or of the Act of June 30, 1864, *supra*, creating it. The Navajos were exclusively interested in departing the Bosque Redondo Reservation, not owning it.

As to the "relation back" rule of pleading, the Commission disagreed with plaintiff's reading of *Snoqualmie Tribe of Indians v. United States*, 372 F.2d 951, 178 Ct.Cl. 570 (1967), where under much different circumstances the court permitted the plaintiff to make a post-1951 amendment to its original petition to add another party because that party had been included in the treaty which was the transaction giving rise to the amended claim, and the area for which recovery was sought was included within the general description of the area ceded under the treaty. There was thus a substantial relationship between the subject-matter of the amended claim and the claim in the original petition, and evidence in support of the amended claim was developed at trial and defended against by the government. In summarizing, the Commission felt that there was not sufficient relation back of the newly advanced Bosque Redondo claim to the claim in the original petition to justify allowance of the amendment which, when filed, was the Commission's first inkling that plaintiff would claim fair value of the Bosque Redondo. It was also news to the defendant.

The first of several petitions filed by the Navajos with the Commission pursuant to the Indian Claims Commission Act was that in docket No. 69 filed July 1, 1950. Thereafter plaintiff's counsel decided to separate the claims into four separate petitions, one of which was the original petition in the instant docket No. 229 filed August 8, 1951. That petition dealt largely with the taking of plaintiff's aboriginal lands. The petition in docket No. 229 was amended September 1, 1954, and again on February 9, 1959.

In paragraph 5 of the First Count of the original petition filed in docket No. 229, and in paragraph 5 of the first amended petition, the plaintiff describes its aboriginal lands by metes and bounds. The purpose of the second (and last) amended petition in docket No. 229 was to revise paragraph 5 into a more explicit description of the plaintiff's aboriginal lands to which it alleged it held exclusive use and occupancy, including a map attached thereto. The Bosque Redondo Reservation allegedly created by the Act of June 30, 1964, *supra*, lies at least 150 miles to the east of the aboriginal homeland area thus described in the petition, and obviously is not included in the aboriginal tract.

In the First and Second Counts of the original petition in docket No. 229, the plaintiff alleged the taking or extinguishment of its alleged title to the lands described in paragraph 5 of the First Count as plaintiff's aboriginal homeland. The prayers for relief in the First and Second Counts similarly demand the fair value of all of the aboriginal homeland except the reservation carved out of it by the Treaty of June 1, 1868, 15 Stat. 667.

From this examination of the original and amended petitions, it is clear that until recently the plaintiff had no conscious intention to claim any land outside of its aboriginal homeland. It neither made a specific claim reference to the Bosque Redondo Reservation, nor did it plead the Presidential Order of January 15, 1864, 1 Kappler 870 (wherein President Lincoln approved a recommendation of January 14, 1864, by the Department of the Interior that a 40-mile square reservation be established for the Apaches at Bosque Redondo), nor the Act of June 30, 1864, *supra*, which appropriated funds for a reservation for the Navajos and the Apaches at Bosque Redondo, without describing its extent.

Despite the absence of conscious intention on the part of the plaintiff to make a claim in its original or amended petitions for the taking of the Bosque Redondo Reservation in 1868 by the defendant, the plaintiff contends that the amendment should be allowed 27 years after the deadline because (1) it states a claim based on transactions set forth in the original petition, (2) the defendant knew of the Bosque Redondo facts, (3) the amendment is necessary to conform to the evidence, and (4) circum-

stances beyond plaintiff's control prevented earlier pleading of the Bosque Redondo claim.

In support of its first argument the plaintiff cites paragraph 13 in the amended petition that by the 1868 Treaty the plaintiff relinquished "all right to occupy any territory outside their reservation." Continuing, since the Bosque Redondo was "outside their [1868] reservation", it should be included in the claim because it was relinquished to the government, despite the fact that the prayer for relief is clearly limited to the fair value of the aboriginal lands that were ceded by plaintiff to the government pursuant to the 1868 Treaty. By Freudian slip, the plaintiff candidly says that such a claim would be "in addition to the aboriginal lands described in paragraph 5" of the petition.

Plaintiff next mutates defendant's actual knowledge of the facts concerning the Bosque Redondo Reservation, including the fact that after the 1868 Treaty Reservation was created and occupied any rights of plaintiff in the Bosque Redondo Reservation ceased, into an awareness that the original petition in docket No. 229 embraced a "potential" claim for the fair value of the Bosque Redondo area. Not only is the nature of plaintiff's interest in that questionable reservation itself subject to some doubt, but if plaintiff had no conscious knowledge that its petition included a claim for its fair value then it is difficult to understand how defendant could be clairvoyantly on notice of the claim. Nor is the lack of due notice remedied by the ritual demand in plaintiff's prayer for relief for "such other further and general relief as to the Commission may seem just and warranted."

It may be, as plaintiff next contends, that the evidence of record would suffice to prove a claim for the Bosque Redondo, but if the defendant had no notice that such a claim was being presented in the general language of the petition, then the availability of evidence to support that claim would not warrant an amendment to conform. Without awareness, the defendant might well neglect to refute evidence supporting a non-claimed wrong.

The plaintiff's final argument is that circumstances beyond the control of plaintiff and its successive counsel prevented the formal pleading of a taking claim for the fair value of the Bosque Redondo. Nothing that plaintiff says in this connection extenuates plaintiff's failure to plead the Bosque Redondo claim until 27 years after the filing deadline. Ignorance of counsel is no excuse for tolling the statute of limitations. Admittedly, when present counsel was engaged he faced a highly complex task and a mammoth record which rendered difficult the quick recognition of the Bosque Redondo situation as a potentially valid extra claim had it been timely presented. Even had he recognized it immediately it was by then far too late to escape the bar.

The decision of the Commission is *affirmed.*