BISSELL, Circuit Judge.
 

 This court by its order dated August 2, 1984, accepted an interlocutory appeal from the United States Claims Court stating the question to be considered as follows:
 

 [W]hether the United States should be compelled to furnish the separate ac-countings called for by the Claims Court’s orders.
 

 These separate accountings are denominated “supplemental” accountings and require the government (a) to account for the amounts paid or expended specifically for the benefit of each reservation-owning Chippewa band, and (b) with respect to the White Earth Band to identify all allotments granted on the White Earth Reservation to persons who. were not members of the White Earth Band as of the effective date of the Nelson Act of 1889. The effect of a band-by-band accounting would be to disallow offsets for payments made by the government to the Tribe unless proved to be made to a particular band. Except for the Red Lake Band, the government has not kept any records of a band-by-band basis. We hold that the United States cannot be compelled to furnish separate ac-countings for property and expenditures based on the pleadings in Nos. 19 and 188. Accordingly, the Interlocutory Order of the Claims Court filed July 2, 1984, requiring these separate accountings, is hereby vacated.
 

 ANALYSIS
 

 The questions presented here arise in proceedings Nos. 19 and 189-A (consolidated) and No. 188 under the Indian Claims Commission Act of 1946, formerly codified at 25 U.S.C. §§ 70
 
 et seq.,
 
 over which the Claims Court now has jurisdiction.
 

 The appellees’ main contention before this court is that the order of the Claims Court is procedural in nature, easily falling within the discretionary powers of the trial court which should be left to manage the cases before it. Except with respect to the Red Lake Band, we do not agree. The underlying substance of appellees’ motion to the Claims Court for a band-by-band accounting and for an accounting of allotments taken from one band’s land and given to Indians of other bands was to set forth new claims not timely pleaded and therefore barred by the statute of limitations.
 
 [2]
 

 Cf. United, States v. Kiowa, Comanche and Apache Tribes,
 
 479 F.2d 1369, 1377-78, 202 Ct.Cl. 29 (1973) (denying motion to intervene which in substance would result in addition of an adverse claim),
 
 cert. denied,
 
 416 U.S. 936, 94 S.Ct. 1936, 40 L.Ed.2d 287 (1974). 25 U.S.C. § 70k (1976) bars claims existing before August 13, 1946, but “not presented within” five years thereafter. It is the precedent of this court that the word “presented,” in light of rule 13(c) of the Indian Claims Commission (identical to rule 15(c) of the Federal Rules of Civil Procedure), “should be read liberally to permit an amended pleading to relate back where there is sufficient notice.”
 
 Snoqualmie Tribe of Indians v. United States,
 
 372 F.2d 951, 959-61, 178 Ct.Cl. 570 (1967). In other words, the inquiry in a determination of whether a claim should relate back focuses on the notice given by the general fact situation set forth in the original pleading.
 
 Id.,
 
 372 F.2d at 960. The court allowed the amendment in
 
 Snoqualmie
 
 “because the
 
 *341
 
 government was put on notice in 1951 of the possibility that the Snoqualmie organization might expand the scope of its claim.”
 
 Id.
 
 at 961.
 

 Notice is the key and nowhere in the original or amended complaints for No. 188 and No. 19 by the Tribe are there facts alleged or issues raised which would have put the United States on notice even as to the possibility that any band other than Red Lake Band was asserting a claim that the Nelson Act pooling and distribution system was unfair to a particular band. In reaching this conclusion we have taken into consideration that the “exceptions” filed to the accountings made by the United States in 1963 have been treated as amendments relating back to the original complaints and setting forth specific claims.
 
 [3]
 
 The rule of relation back does not extend to amendments that add new causes of action and we will not allow procedural tactics, which are in essence amendments to the complaint, to thwart this rule.
 

 I
 

 With respect to the complaint in No. 19 (“Second Amended Complaint covering Original Complaints in Dockets Nos. 19 and 20”), filed February 11, 1959, paragraphs 8 and 9 contain the following allegations by the plaintiff, The Minnesota Chippewa Tribe:
 

 8. Under the Nelson Act, the property of the plaintiff was in the hands of the defendant as a trustee to dispose of the property and expend the proceeds, all in accordance with the terms and conditions of the agreement under which the plaintiff was induced to convey its property in trust to the United States.
 

 9. ... To the extent that the defendant spent plaintiff’s funds
 
 in accordance with the provisions of the Nelson Act
 
 or spent funds with plaintiff’s agreement and consent, the plaintiff makes no claim. [Emphasis added.]
 

 The Nelson Act specifically provides:
 

 SEC. 7. That all money accruing from the disposal of [the Indians’] lands in conformity with the provisions of this act shall ... be placed in the Treasury of the United States to the credit of
 
 all the Chippewa Indians in the State of Minnesota
 
 as a permanent fund, which shall draw interest at the rate of five per centum per annum, payable annually for the period of fifty years, after the allotments provided for in this act have been made, and which interest and permanent fund shall be expended for the benefit of said Indians____ [Emphasis added.]
 

 No mention is made by the Minnesota Chippewa Tribe in its “Exceptions to the Defendant’s Accounting Report” in No. 19, filed March 24, 1969, that the accounting should have been made on a band-by-band basis or that each band was making a claim for its proportionate share in derogation of the terms of the Nelson Act. Indeed, the Minnesota Chippewa Tribe made the following representation to the court:
 

 The Minnesota Chippewa Tribe and its member bands are the plaintiffs in this docket. The Tribe embraces all Chippewa bands in Minnesota, except the Red Lake Band.
 

 In Docket No. 19, one of the consolidated cases, these same plaintiffs seek
 
 an accounting as to all funds and property received and expended for the Minnesota Chippewa Tribe
 
 under the Act of January 14, 1889, c. 24, 25 Stat. 642, 1 Kappler 301, as amended. The accounting in Docket No. 188 is limited to matters outside of the Docket No. 19 accounting.
 

 Exceptions to the Defendant’s Accounting Reports at 1-2, (filed Jan. 6, 1970) (emphasis added). The Minnesota Chippewa Tribe further explained: “Funds derived from lands and timber in trust under the 1889
 
 *342
 
 Act belong to
 
 the common pool of the Minnesota Chippewas
 
 and must be accounted for under that Act.”
 
 Id.
 
 at 18-19, exception No. 8 (emphasis added).
 

 Nothing in the original pleadings or any amendments can be construed to have put the United States on notiee.that the various bands of the Minnesota Chippewa Tribe were claiming entitlement to property or proceeds thereof on a band-by-band basis whether directly or indirectly by way of disallowance of an offset.
 

 II
 

 In contrast, Red Lake Band, through its exceptions, filed January 2, 1970, in No. 189-A clearly set forth in exceptions 1-40 its demand for a separate accounting of Nelson Act Funds and in exception 41 its claim for damages for “failure to pay the Red Lake Band a share of the proceeds under the 1889 Act proportionate to the contribution of the Band.” As to the ultimate validity of this claim of Red Lake Band, that is a matter not before this court at this time. However, the claim was made and it is within the discretion of the trial court to order a separate accounting with respect to the Red Lake Band at this time.
 

 III
 

 With respect to accounting to the White Earth Band for wrongful allotments, the only allegations challenging who improperly received land on the White Earth Reservation are contained in paragraph 28(j) of Count III of the Minnesota Chippewa Tribe’s original complaint in No. 188, filed August 2, 1951, concerning misuse of “half-breed script” in granting land rights, a claim germane to the Tribe as a whole. Paragraph 28(k) includes an item for loss of timber cut by persons whom the United States caused to be improperly enrolled as members of the Tribe and to whom “allotments of land” were made but later revoked. No other reference to “allotments” appears in any complaint. In its “Exceptions to the Defendant’s Accounting Reports other than for the 1889 Act covered in Docket No. 19,” filed January 6, 1970, which includes some 48 exceptions, no mention is made of any claim for the value of allotments solely because they were made to non-White Earth Band members. Nor is anything found in appellees’ Pretrial Statement in No. 188, filed May 28, 1975, even hinting that a claim was made for damages for the allotment of land to persons who were members of the Tribe, but who were not members of the White Earth Band on the effective date of the Nelson Act.
 

 Nowhere did these pleadings put the United States on notice that the White Earth Band might possibly assert a claim for allotments to non-band members. The appellees cannot now through a “procedural” mechanism be allowed to pursue claims in No. 188 seeking damages for allotments from the White Earth Reservation to members of the Tribe who were not members of White Earth Band.
 

 The pleadings in No. 19 are not applicable as the claims contained therein were limited to land ceded to the United States under the Nelson Act, and at least the portion of White Earth Reservation used for allotments was not so ceded.
 
 See Chippewa Indians of Minnesota v. United States,
 
 90 Ct.Cl. 140, 143 (1940);
 
 Minnesota Chippewa Tribe, Red Lake Band, et al. v. United States,
 
 Nos. 19 and 189-A, slip op. (Ct.Cl. March 18, 1980),
 
 aff'd,
 
 227 Ct.Cl. 538 (1981).
 

 IV
 

 Based upon the foregoing, the United States cannot be compelled to furnish, except as to Red Lake Band, the separate accountings called for in the Interlocutory Order of the United States Claims Court, filed July 2, 1984, and the same is vacated.
 

 VACATED.
 

 [2]
 

 . Although the issue of statute of limitations was not raised below or by the parties on appeal, an appellate court is obliged to notice want of jurisdiction in the court below sua sponte.
 
 Montgomery Ward & Co., Inc. v. Zenith Radio Corporation,
 
 673 F.2d 1254, 1258 n. 7 (Fed.Cir.1982). The issue of whether particular claims are barred by 25 U.S.C. § 70k (1976) is a jurisdictional issue,
 
 Snoqualmie Tribe of Indians v. United States,
 
 372 F.2d 951, 178 Ct.Cl. 570 (1967), and therefore calls into question the jurisdiction of the court below. Also, under 28 U.S.C. § 1292(d)(2), this court’s scope of review is not limited to the certified question. Rather, we can consider all questions material to the correctness of the interlocutory order.
 
 United States v. Connolly,
 
 716 F.2d 882, 885 (Fed.Cir.1983).
 

 [3]
 

 .
 
 See
 
 1981 rulings in these proceedings,
 
 Minnesota Chippewa Tribe v. United States,
 
 229 Ct.Cl. 666, 667, 673, 681, 710;
 
 id.
 
 at 678.