The **MINNESOTA CHIPPEWA TRIBE,** et al., Plaintiffs,

v.

The **UNITED STATES,** Defendant.

No. 188.

United States Claims Court.

Feb. 3, 1987.

Marvin J. Sonosky, Washington, D.C., for plaintiffs. Reid Peyton Chambers and Rodney J. Edwards, of counsel.

Joseph S. Davies, with whom was Asst. Atty. Gen. F. Henry Habicht II, Washington, D.C., for defendant.

## OPINION

BRUGGINK, Judge.

Pending before the court is plaintiffs' motion for reconsideration of that portion of the court's opinion dated November 20, 1986, 11 Cl.Ct. 221, which dismissed from docket 188 plaintiffs' White Earth allotment claim. For the reasons that follow, plaintiffs' motion is denied.

## BACKGROUND

In its November 20, 1986 opinion the court considered eight motions for summary judgment filed by the parties in docket numbers 19, 188, and 189–A.[1] Among them was defendant's motion with respect to plaintiffs' claim that land allotted to them on the White Earth Reservation was forestry land rather than agricultural. The court found that the Nelson Act of January 14, 1889 (ch. 24, 25 Stat. 642) provided for the cession of nearly all of plaintiffs' land except for the White Earth Reservation.[2] Because the pleadings in docket 19 are limited to claims concerning land ceded to the United States under the Nelson Act, *see Minnesota Chippewa Tribe and Red Lake Band v. United States,* 768 F.2d 338, 342 (Fed.Cir.1985), the court concluded that claims concerning that reservation (*i.e.,* unceded land) could not properly be raised in docket 19. It next found that plaintiffs' demand for an accounting in count III of the complaint in docket number 188, even when considered with their more specific exceptions filed in 1970, failed to put defendant on notice of their allotment claim. Finally, the court rejected plaintiffs' assertion that they could not have raised the claim in a more timely manner. Based on these findings, the court held that the White Earth allotment claim had not been asserted until after the limitations period had passed and that it did not constitute an amendment which related back to the original complaint. Thus, the claim was dismissed.

## PLEADINGS

Plaintiffs requested reconsideration of that portion of the court's opinion[3] by motion filed on December 5, 1986. Their con-

---

1. Docket number 188 does not include the Red Lake Band, which is the named plaintiff in docket 189–A.

2. Plaintiff express concern that the court's opinion implies that upon passage of the Nelson Act they lost title to all of their tribal land except that portion necessary for allotments. Nothing in the opinion was intended to convey such a conclusion. Rather, the court's decision makes it clear that the cession was in trust, not outright. *See, e.g.,* opinion at 6–8, 13. Title to trust lands was divested only upon their disposition by the trustee.

3. Plaintiffs state in their motion that they do not request reconsideration of that part of the decision relating to dockets 19 and 189–A. In their reply to defendant's response to the motion, however, they suggest that the court, *sua sponte,* reconsider its opinion as to docket 19. For the reasons given in the November opinion, and in light of the analysis applicable to a claim for relation back set forth, *infra,* the court declines to do so.

tention is that the petition in docket 188 adequately put defendant on notice of their claim. More specifically, they assert that a claim is "presented" within the meaning of the applicable statute of limitations if the opposing party is afforded notice in the original pleadings that the specific claim may be brought as a result of the more general, timely filed complaint. Adequate notice, they state, is provided where the later claim arose from the general fact situation, the conduct, transaction, or occurrence originally pleaded, or if that first pleading contains a "catchall" clause "inclusive of claims not specifically mentioned." Pointing to count III of their docket 188 petition, plaintiffs contend that when read together, paragraphs 28(d)–(g) and (k) and 29 apprise defendant of a claim for the value of the timber on both ceded and unceded lands. They contend, therefore, that defendant was on sufficient notice as a result of their petition that their more specific White Earth allotment claim might be brought.

Defendant responded in opposition to the motion on January 9, 1987. It asserts that for the reasons relied on by the court, the allotment claim must be dismissed, that nothing in plaintiffs' motion requires a different result, and that the United States Court of Appeals for the Federal Circuit has previously refused to allow plaintiffs to amend their complaint in similar circumstances, showing that the current claim is also improperly brought. On January 28, 1987, plaintiffs filed a reply to defendant's response.

### ANALYSIS

The single issue presented for the court's resolution by plaintiffs' motion is whether their August 1, 1951 petition in Indian Claims Commission (Commission) docket 188 sufficiently raises the claim concerning the White Earth allotments so that their March 3, 1986 statement of that claim relates back to their timely original pleading. The court concludes that it does not.

Under section 12 of the Indian Claims Commission Act (Indian Claims Act), 25 U.S.C. § 70k (1976), the Commission was authorized to accept claims for a period of five years after August 13, 1946, "and no claim existing before such date but not presented within such period may thereafter be submitted to any court or administrative agency for consideration, nor will such claim thereafter be entertained by the Congress."

■ The Commission's statute of limitations is jurisdictional. *Snoqualmie Tribe of Indians v. United States,* 178 Ct.Cl. 570, 586, 372 F.2d 951, 960 (1967); *see United States v. Seminole Nation,* 299 U.S. 417, 57 S.Ct. 283, 81 L.Ed. 316 (1937). However, due to the remedial nature of the Indian Claims Act, the Court of Claims has held that a liberal construction of its provisions is required. *United States v. Lower Sioux Indian Community,* 207 Ct.Cl. 492, 502, 519 F.2d 1378, 1383 (1975); *Otoe and Missouria Tribe of Indians v. United States,* 131 Ct.Cl. 593, 131 F.Supp. 265, *cert. denied,* 350 U.S. 848, 76 S.Ct. 82, 100 L.Ed. 755 (1955). Nonetheless, the "limitations and conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied." *Soriano v. United States,* 352 U.S. 270, 276, 77 S.Ct. 269, 273, 1 L.Ed.2d 306 (1957), *quoted in Navajo Tribe v. United States,* 220 Ct.Cl. 172, 174, 597 F.2d 1367, 1368–1369 (1979). The question, therefore, is whether the claim was "presented" before August 13, 1951, and in making this determination, "notice is the test." *Snoqualmie,* 178 Ct.Cl. at 587, 372 F.2d at 960. *See Schiavone v. Fortune,* —— U.S. ——, 106 S.Ct. 2379, 91 L.Ed.2d 18 (1986) (the Court denied plaintiffs' attempt to amend their complaint two months out of time, noting that while there is an element of arbitrariness in any limitations period, Fed.R.Civ.P. 15(c) required that result on the facts of the case).

■ The Commission's Rule 13(c) provided that a later pleading "relates back to the date of the original pleading" if it "arose out of the conduct, transaction, or occurrence set forth" in the original pleading. The Commission's rule was identical to

both Court of Claims Rule 22(c) and Rule 15(c) of the Federal Rules of Civil Procedure. RUSCC 15(c), this court's equivalent provision, is also identical.[4] Under these rules, "the inquiry in a determination of whether a claim should relate back will focus on the notice given by the general fact situation set forth in the original pleading." *Snoqualmie*, 178 Cl.Ct. at 587, 372 F.2d at 960; *see White Mountain Apache Tribe v. United States*, 8 Cl.Ct. 677, 682 (1985). Accordingly, where the original pleading gives fair notice of the situation out of which a claim or defense arises, an amendment which merely makes more specific what has already been alleged will relate back to the date of the original pleading. 3 *Moore's Federal Practice*, ¶ 15.15[3] at 15–194 (2d ed. 1984). An amendment which states an entirely new claim for relief based on different facts will not relate back. *Id.* at 15–196.

■ To make this determination, the original and amended pleadings must be compared. In *Snoqualmie*, 178 Ct.Cl. at 587–88, 372 F.2d at 961, the Court of Claims allowed relation back of an amendment under circumstances where a treaty ceded land to the United States without specifying which tribe owned any portion of the cession. One tribe had filed a complaint for the value of its contribution; an amendment was later filed on behalf of a subgroup of that tribe which had also signed the treaty, and the amendment allowed by the court simply sought to assert ownership of part of the land already at issue. Similarly, an amendment claiming the taking for unconscionable consideration

of a specified reservation by a certain act of Congress was held to relate back where the original complaint asserted improper management and disposal, as well as improvident alienation of the tribe's property. *Lower Sioux*, 207 Ct.Cl. at 505–06, 519 F.2d at 1385. With respect to the plaintiffs in the case at bar, the court allowed the relation back of an amendment which sought compensation for the value of flowage easements when the original complaint, in addition to demanding an accounting for all of their property, asserted that dams built by defendant flooded plaintiffs' land and they had not been compensated. *Minnesota Chippewa Tribe v. United States*, 230 Ct.Cl. 776, 777, 784–85 (1982).[5]

Conversely, amendment has been denied where the original complaint set forth nine specific wrongs which did not include tax exemption, the subject of the late filed pleading. *Menominee Tribe of Indians v. United States*, 223 Ct.Cl. 662, 650 F.2d 286 (1980). In *Navajo Tribe v. United States*, 220 Ct.Cl. 172, 597 F.2d 1367 (1979), the court disallowed an amendment which sought to add a claim for the value of a certain reservation. The motion to amend was denied since although the original complaint referenced that reservation, it made a claim only for land within the aboriginal homeland, which did not include the reservation in question. *See also Northern Paiute Nation v. United States*, 218 Ct.Cl. 699 (1978) (another case in which amendment was denied despite the broad allegations of the original complaint).

---

4. The rule states:
   (c) Relation Back of Amendments. Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading.

5. In their reply brief plaintiffs contend that the Court of Claims relied solely on the general allegations of the complaint in docket 188 as notice of their flowage claim and that this now requires a finding that notice was also given as to the White Earth allotments claim. The court disagrees. While the earlier decision relies in

large part on the general provisions of the complaint, it also specifically cites that portion of the complaint stating that "dams were built flooding large areas of plaintiffs' land. Plaintiffs further allege that they have not been compensated for damages due to the flooding." *Minnesota Chippewa Tribe v. United States*, 230 Ct.Cl. 776, 785 (1982). The court's conclusion was that the more general allegations "taken together with all the provisions of the complaint" provided sufficient notice. *Id.* With respect to the instant motion, however, no such specific allegation relative to improper allotments is made in the complaint.

The recent decision of the Court of Appeals for the Federal Circuit in this same action is particularly instructive. In *Minnesota Chippewa Tribe*, 768 F.2d 338, the court addressed plaintiffs' claims that they were entitled to a band-by-band accounting and that the White Earth Band was entitled to damages for wrongful allotments made on its reservation. This court had allowed those amendments. On review, the court determined that although the complaint sought an accounting of all receipts and expenditures, it was insufficient to put the United States on notice of a claim of entitlement to an accounting on a band-by-band basis. *Minnesota Chippewa Tribe*, 768 F.2d at 340–42. With respect to the White Earth ·claims, the court found that the only reference to allotments was contained in paragraphs 28(j) and (k) of the complaint, and that while those paragraphs sought relief for allotments to non-members of the tribe, they failed to put defendant on notice that the White Earth Band might assert a claim for allotments to non-members of the band. *Id.* at 342.

Plaintiffs' present claim is that defendant deliberately allotted pine lands instead of agricultural land on the White Earth Reservation so that lumber companies could gain easy access to vast amounts of timber at low prices. They point to the following portions of the petition in docket 188 as sufficient notice of their claim:

28. Defendant in administering the business and affairs of plaintiffs has made irregular and improper deductions and charges, the nature and extent of which can only be determined by an accounting.

Among such items are the following:

\* \* \* \* \* \*

(d) Timber upon the reservations was sold at prices below the market value and reasonable worth.

(e) Defendant caused estimates to be made of timber. by inexperienced persons....

\* \* \* \* \* \*

(f) As a result of such improper estimate timber was sold below the true value.

(g) Upon information and belief plaintiffs allege that defendant failed to collect for timber cut from plaintiffs' tribal lands either in trespass or otherwise.

\* \* \* \* \* \*

(k) On the White Earth Reservation defendant caused to be improperly enrolled at least 801 individuals, to whom allotments of land were made, although they were not entitled to such grants. After being permitted to cut and remove timber these parties were suspended on the ground of fraudulent and improper enrollment, all of which plaintiffs allege, upon information and belief, was permitted and caused by the negligent acts of the defendant's agents. Plaintiffs thereby suffered damages in the value of the timber thus removed.

\* \* \* \* \* \*

29. Plaintiffs are entitled to an accounting for all property and money belonging to plaintiffs which have come into the hands of defendant or under its control belonging to the various bands of Minnesota Chippewa Indians or arising out of the reservations of the Minnesota Chippewa Indians.

In their reply brief plaintiffs also rely on paragraph 6 of the complaint as evidence that timely notice was given. That paragraph states:

6. This action is brought to determine the rights and claims of plaintiffs arising out of the administration of the property and affairs of plaintiffs and to recover damages sustained thereby; to recover money illegally and improperly expended by defendant; to obtain an accounting for all property and money coming into the possession of, held and/or administered by defendant for plaintiffs and their predecessors.

The general assertion made by paragraph 28 is that defendant "has made irregular and improper deductions and charges." The particulars plaintiffs cite

are that the price at which timber was sold or taken was less than its value, that estimates of timber were made by inexperienced people,[6] that improperly enrolled individuals were allotted land, and that plaintiffs are entitled to an accounting. Paragraphs 6 and 29 more generally assert that plaintiffs have been damaged as a result of the relationship of the parties and that they are entitled to an accounting to determine the extent of their damages. The court concludes that these recitations cannot be fairly read, consistent with the Federal Circuit's decision in *Minnesota Chippewa Tribe, id.*, as notice that plaintiffs intended to assert a claim that the entire allotment scheme was improper because the wrong land was allotted. Nowhere does the cited portion of the complaint, or its other parts, assert either directly or by reasonable implication that the allotments themselves were improper, that the plan intended by the Nelson Act was not carried out, or that plaintiffs were damaged because they were unable to farm their allotted lands. Nor does the complaint even reference the Act of April 28, 1904.

Plaintiffs also failed to make such assertions in their memorandum of December 11, 1969 to the Commission, which was intended to define the legal issues in their cases, or in their May 28, 1975 pretrial statement setting forth the nature of their claim in docket 188. Such omission is striking in light of their specific assertion of a claim for the value of the 1904 allotments and the timber on them before the Court of Claims, *see Chippewa Indians of Minnesota v. United States*, 90 Ct.Cl. 140 (1940), and the court's earlier reference to the allotment of valuable pine lands, *Chippewa Indians of Minnesota v. United States*, 80 Ct.Cl. 410, 447 (1935), as well as the 1911–1912 report prepared for the House of Representatives when it held hearings on the matter.[7]

Plaintiffs argue that their request for an accounting is sufficient notice of their current claim. In support, they point to the undeniable fact that the allotment scheme, created by the Nelson Act and subsequent enactments, arises from the same general facts set out in the complaint in dockets 19 and 188. If that broad similarity were sufficient reason to allow relation back, almost every matter growing out of the hundred year long relationship of the parties could be raised now or in the future as a result of that single complaint. Such a low threshold test would be utterly unworkable in this thirty-five year old litigation. Given the breadth of the parties' dealings over a one-hundred year period and the admitted existence of certain irreducible circumstances common to all those dealings, plaintiffs' test would be tantamount to waiver of the statute of limitations and would, in any event, be inconsistent with the decision in *Minnesota Chippewa Tribe*, 768 F.2d 338.

---

**6.** As noted, in reliance on its reading of the Nelson Act and earlier decisions interpreting it, the court held that the portions of the White Earth and Red Lake Reservations used for allotments were not ceded under the Nelson Act. Section 4 of that act provided for the survey and appraisal of only the ceded land. The Act of April 28, 1904, Pub.L. No. 58–218, 33 Stat. 539, increased the size of the allotments, but from land already reserved pursuant to the Nelson Act. Thus, no surveys and estimates of timber on the allotted land were required by the statutes.

Plaintiffs assert that because the Nelson Act envisioned that allotments were to be made from agricultural land, no forested land could be allotted and all pinelands therefore must be considered to have been ceded. By thus assuming their conclusion through a legal fiction, plaintiffs argue that they are free of any limitations created by the court's distinction between ceded and unceded land. However, they also state that "[t]he issue of 'ceded' and 'unceded' is for the merits." Plaintiffs' argument is inconsistent, and for purposes of ruling on this motion the court finds no reason to alter its earlier holding in this regard.

**7.** In *Navajo Tribe v. United States*, 220 Ct.Cl. 172, 179, 597 F.2d 1367, 1371 (1979), the court rejected the argument that circumstances beyond counsel's control prevented the timely assertion of a claim of which he had no knowledge. In so doing, it noted the "mammoth record which rendered difficult the quick recognition" of the claim but found in it insufficient reason to allow amendment.

Plaintiffs' reply brief places heavy reliance on the legislative history of the Indian Claims Act. They cite portions of that history evidencing Congressional concern that the Commission be empowered to hear "all possible claims" so that no tribe would be foreclosed from presenting its claims on their merits. As support for their thesis that, in this light, their allotment claim must be seen as having been presented, plaintiffs' recitation misses the mark. The expressed Congressional concern was to expand the scope of claims which potentially could be filed beyond that which would normally limit the tribes' rights. Thus, causes of action not previously recognized, such as those based on fair and honorable dealings, were created. Having allowed the opportunity for the presentation of all claims, though, Congress nonetheless included a statute of limitations that set a time by which such claims had to be presented. If plaintiffs were correct that the term "presented" equates with the purpose to allow "all possible claims," setting a finite period of limitations would have been inconsistent. That portion of the legislative history simply cannot be read as advance approval for the belated assertion of new theories *ad infinitum*.

Moreover, plaintiffs' position is ill served by their reference to the concern expressed by Congress that the Indians be allowed an opportunity to present their claims so that they would not later seek special jurisdictional acts allowing them to bring suit. The cited portion of the debates shows that Congress hoped "to put an end ... [to] new claims—new claims—and more new claims." By providing a five year period for the tribes to file "all possible claims," Congress could reasonably believe that it had succeeded in doing so. Allowing plaintiffs' prosecution of their 1986 White Earth claim would frustrate Congress' aim. Further, while plaintiffs note that tribes may seek special jurisdictional acts if their claims are not heard here, the decision to grant or deny such requests reposes in the legislature. This court's exercise of its judicial function cannot be influenced by the possibility that alternative remedies may subsequently be created.

Finally, the court also finds insufficient reason in *Menominee*, 223 Ct.Cl. at 664–65, 650 F.2d 286, to allow relation back because of the inclusion of a "catchall clause." In *Menominee* the court merely noted the absence of such a clause and that there was not even any ambiguous language which arguably could have been meant to include the late-filed claim. It did not, therefore, explore the degree of specificity necessary to provide the "timely notification to defendant that it must deal with ... the claim" which it found essential. *Id.* at 664, 650 F.2d 286. Nothing in plaintiffs' general demand for an accounting provides reasonable notice to defendant or distinguishes their current request for amendment from that already rejected by the Federal Circuit. Plaintiffs' contention that that case can be distinguished is unpersuasive. The docket 188 complaint both requests an accounting and in two paragraphs states that money was lost as a result of the wrongful cutting of timber. The court's finding that the complaint encompassed no request for an accounting on a band-by-band basis or for damages due to allotments to non-band members leaves little room for a conclusion that a claim even less specifically foreshadowed was nonetheless presented.

## CONCLUSION

For the foregoing reasons, the court concludes that defendant was not afforded adequate notice by any timely filed pleading in docket 188 of plaintiffs' March 3, 1986 claim concerning the improper allotment of pine lands. Accordingly, plaintiffs' motion for reconsideration is denied and that claim is dismissed.

It is so ORDERED.