PUEBLO OF SANTO
DOMINGO, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 355–D.

United States Claims Court.

Dec. 22, 1988.

Richard W. Hughes, Albuquerque, N.M.,
for plaintiff.

Bernard M. Sisson, Washington, D.C.,
with whom was Asst. Atty. Gen. Roger J.
Marzulla, for defendant.

## OPINION

FUTEY, Judge.

Plaintiff, Pueblo of Santo Domingo, moves the court to amend a 1969 stipulation and map setting forth defendant's liability for extinguishing plaintiff's aboriginal title to certain lands. Defendant contends this court can not entertain plaintiff's motion because it is untimely and jurisdictionally barred pursuant to section 12 of the Indian Claims Commission Act. For the reasons stated hereinafter, plaintiff's motion is denied.

### Factual Background

Plaintiff's "Motion to Amend Map of Aboriginal Area, and 1969 stipulation as to Standing to Sue, Liability and Area," now before this court[1] arises from an action originally filed in 1951 by the Pueblo of Santo Domingo (Pueblo) with the Indian Claims Commission (ICC).[2] The original

---

1. On November 10, 1982, the Claims Court ordered Docket No. 355 subdivided into 8 separate subdockets. The present subdocket, 355–D, is captioned Indian Title Claims (management claims). *See Order Re: Docketing and Caption* (unpublished).

2. The ICC was established on August 13, 1946, pursuant to Pub.L. No. 79–726, 60 stat. 1049 (codified at 25 U.S.C. § 70 (1976)) to hear claims in law and equity on behalf of American Indians against the United States.

petition demanded rents and profits for trespass and invasions resulting from defendant's failure to protect the Pueblo's possessory rights in certain lands. The Bureau of Land Management, prepared a map of the disputed area in August of 1967 based in part upon evidence presented by the Pueblo. The map depicted the aboriginal lands claimed by plaintiff, and other tribes, as well as various land grants in the region.[3]

On October 29, 1969, the Pueblo and the United States entered into a "Stipulation as to Standing to Sue, Liability and Area" (stipulation), agreeing that the United States was liable for extinguishing the Pueblo's aboriginal title to 77,273.24 acres as delineated on the map. In a decision of May 9, 1973, the ICC determined the extent of the lands taken and the dates of taking. *Pueblo of San Ildefonso, et al. v. United States*, 30 Ind.Cl.Comm. 234 (1973). The Court of Claims affirmed this holding on appeal. *United States v. Pueblo of San Ildefonso, et. al.*, 206 Ct.Cl. 649, 513 F.2d 1383 (1975).

Upon expiration of the ICC in 1978, all claims not fully adjudicated were transferred to the Court of Claims, upon which jurisdiction over these cases was conferred. 25 U.S.C. § 70v (1976). The present case was transferred to the Court of Claims on October 18, 1978, to determine the amount of compensation due as a result of the taking as set forth in the stipulation.

In 1981, plaintiff filed a motion to withdraw from the 1969 stipulation and map, contending that plaintiff's attorney entered into the agreement without the Pueblo's knowledge or authority. The court denied this motion as untimely, holding that since relief was not sought seasonally, the Pueblo was bound by the stipulation even if, as plaintiff contended, its attorney was without express authority to enter into the stipulation. *Pueblo of Santo Domingo v. United States*, 227 Ct.Cl. 265, 647 F.2d 1087 (1981), *cert. denied*, 456 U.S. 1006, 102 S.Ct. 2296, 73 L.Ed.2d 1300 (1982).

Plaintiff asserts that while researching historical records in 1983, documents were found which indicate that the Pueblo acquired title to certain lands through the purchase of a Spanish land grant. With the exception of 2,400 acres, all of these lands are encompassed by the stipulation and map. The Pueblo's title to the land arises from a land grant in 1730 from Spanish Governor Bustamante, to Diego Gallegos, a Spanish settler. In 1748 the Pueblo purchased this land for 400 pesos.

In 1983, plaintiff brought an action in the United States District Court for the District of New Mexico asserting title to this land. The district court determined that the Pueblo's title to the Gallegos grant was valid and unimpaired by the United States. *Pueblo of Santo Domingo v. Rael*, No. 83–1888 HB (D.N.M., memorandum opinion and order filed May 16, 1986, judgment entered Sept. 4, 1986), *appeal pending*, No. 86–2459 (10th Cir. filed Sept. 28, 1986).

In the present action, plaintiff contends that the 1969 stipulation and map reflecting the extinguished aboriginal title of the Pueblo should be amended to reflect the Pueblo's ownership of the Gallegos grant. Defendant opposes amendment of the 1969 stipulation and map, averring (1) plaintiff knew of the documents relating to the Gallegos grant and has waited too long to seek relief, and (2) this action, which presents a new claim, is barred by section 12 of the Indian Claims Commission Act (ICCA). Oral argument on the motion to amend was heard by this court on September 22, 1988.

### Discussion

Plaintiff claims that evidence of the Gallegos grant, upon which this amendment is based, is newly discovered evidence. It is asserted that if the Gallegos grant was known to the parties in 1969, the stipulation would have reflected the Pueblo's title to this land.

---

**3.** The United States has recognized Indian title to lands under two theories. Aboriginal title is held by virtue of exclusive use and occupancy over an extended period of time. Whereas, those lands recognized under a prior sovereign, held in fee as of the date of the American accession of sovereignty, are held as grant title lands.

The Claims Court rule concerning relief in instances of newly discovered evidence, RUSCC 60(b), provides in pertinent part:

> [T]he court may relieve a party ... from a final judgment, order, or proceeding for ... (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under rule 59(b).... The motion *shall be made* ... not more than one year after the judgment, order, or proceeding was entered or taken. (emphasis added)

Plaintiff's motion for amendment does not meet the one year time limit of RUSCC 60(b). This court has enforced compliance with the mandatory language of this rule. *See Zinger Const. Co. v. United States,* 13 Cl.Ct. 752, 755 (1987); *Myers v. United States,* 8 Cl.Ct. 718, 721 (1985), *aff'd,* 795 F.2d 1016 (Fed.Cir.1986), *cert. denied,* 479 U.S. 1099, 107 S.Ct. 1322, 94 L.Ed.2d 174 (1987). Accordingly, plaintiff's motion must be denied.

Furthermore, this court remains unconvinced that evidence of the Gallegos grant is newly discovered. Plaintiff's own assertions contradict such a finding. The documents which plaintiff now considers newly discovered evidence was presented in claims filed with the New Mexico Surveyor General in 1856, the Court of Private Land Claims in 1893, and submitted to the Bureau of Indian Affairs in 1937.[4]

In 1981, when plaintiff attempted to withdraw from the same stipulation contemplated in this action, the Court of Claims determined that the motion to withdraw, almost 12 years after entry of the stipulation, was untimely.[5] *Pueblo of San-*

*to Domingo,* 227 Ct.Cl. 265, 647 F.2d 1087. "[T]he conclusion is unavoidable that petitioner has tarried far too long" in bringing its claim to withdraw from the stipulation. 227 Ct.Cl. at 268, 647 F.2d at 1089. "Petitioner's attempt herein to withdraw from a stipulation entered nearly twelve years ago falls egregiously outside the permissible range of delay." 227 Ct.Cl. at 267, 647 F.2d at 1089. Similarly, this court finds plaintiff's motion to amend the 1969 stipulation and map, now *nineteen years* after its entry, well beyond any reasonable time limit.

■ Defendant additionally opposes amendment of the map on the basis that this motion amounts to a new claim based on trespass to lands owned in fee simple through the Gallegos grant, in contrast to the original petition which asserted a claim for extinguishment of aboriginal title. Plaintiff asserts that this motion does not present a new claim. In the alternative, plaintiff contends that if this is found to represent a new claim, the original petition "clearly embraces" the claim asserted in this motion, thus it should be found to relate back.[6]

Section 12 of the ICCA provides:

> The Commission shall receive claims for a period of five years after August 13, 1946, and no claim existing before such date but not presented within such period may thereafter be submitted to any court or administrative agency for consideration, nor will such claim thereafter be entertained by the Congress.

25 U.S.C. § 70k (1976). Pursuant to this section, no new claims may be asserted for

---

4. Plaintiff asserts that because the documents evidencing the Gallegos grant were written in Spanish, the Pueblo did not know the exact content of the documents. The fact that these documents were brought to tribunals which could have afforded relief, indicates to this court that the Pueblo was, at least to some extent, aware of the content of the documents. It also appears that a diligent attempt to discern the meaning of the documents would have uncovered their significance.

5. This court is aware that in 1978 the ICC allowed plaintiff to reopen the 1969 stipulation as to the aboriginal boundaries. *Pueblo of Santo Domingo v. United States,* 42 Ind.Cl.Comm. 306 (1978). The ICC's discretion in that instance in 1978, however, has no bearing on the court's present determination regarding amendment of the stipulation based on a grant title.

6. Plaintiff's reply to defendant's response to motion to amend map of aboriginal area, etc., at p. 6.

**142**

the first time after August 13, 1951. However, a new claim which "relates back" to a timely filed Petition may be allowed.[7]

The relation back doctrine applies to amendment of pleadings. This motion by contrast requests that the stipulation entered into by both parties be amended. Therefore, the relation back doctrine is inapplicable.

This court's decision, to deny plaintiff's motion, does not contradict that of the New Mexico District Court. When parties enter into a stipulation they each give up certain rights. By entering into the 1969 stipulation plaintiff gave up its right to assert title to the lands contained therein.[8] Similarly, the defendant gave up the right to contest the fact that the government had extinguished these lands. To now amend the stipulation would deprive the parties of the benefits and compromises derived therefrom. Therefore, the district court's finding, that the Pueblo's title to the Gallegos grant is valid and unimpaired, does not change the effect of the 1969 stipulation.

 Although this court is not without compassion for the plight of the American Indians, the jurisdictional bounds upon the Claims Court dictate this finding. The Congressional intent behind section 12 of the ICCA was to bring all Indian claims arising prior to 1946 to a conclusion and bar the assertion of new claims after the statutory deadline. *Minnesota Chippewa Tribe v. United States*, 11 Cl.Ct. 534, 540 (1987). Allowing this motion 19 years after entry of the stipulation directly contradicts the intent of the law as well as sound judicial policy.

*Conclusion*

For the reasons stated hereinafter, plaintiff's motion is hereby denied.

IT IS SO ORDERED.

---

7. Rule 13(c) of the General Rules of Procedure of the Indian Claims Commission, which is identical to Rule 15(c) of the Rules of the United States Claims Court, provides:

Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading.

"[T]he inquiry in a determination of whether a claim should relate back will focus on the notice given by the general fact situation set forth in the original pleading." *Snoqualmie Tribe of Indians v. United States*, 178 Ct.Cl. 570, 587, 372 F.2d 951, 960 (1967); *White Mountain Apache Tribe of Arizona v. United States*, 8 Cl.Ct. 677, 682 (1985). "An amendment which states an entirely new claim for relief based on different facts will not relate back." *Minnesota Chippewa Tribe v. United States*, 11 Cl.Ct. 534, 537 (1987) (citation omitted).

8. Lands which lie outside the boundaries contemplated in the 1969 stipulation and map remain unaffected.